Nicholas TRAXLER, Petitioner,

v.

ENTERGY GULF STATES,
INC., Respondent.

No. 10–0970.

Supreme Court of Texas.

Argued Nov. 10, 2011.

Decided March 9, 2012.

Rehearing Denied Oct. 12, 2012.

Jane Swearingen Leger, John Andrew Cowan, Provost & Umphrey Law Firm, L.L.P., Beaumont, TX, for Nicholas Traxler.

Paul A. Scheurich, Christine S. Kibbe, Energy Services, Inc., Beaumont, TX, Jacqueline M. Stroh, Law Office of Jacqueline M. Stroh, P.C., San Antonio, TX, for Entergy Gulf States, Inc.

Marnie Ann McCormick, Duggins Wren Mann & Romero, LLP, Austin, TX, for Amicus Curiae AEP Texas North Company.

James Elliott Guy, Sutherland Asbill & Brennan LLP, Austin, TX, for Amicus Curiae Sharyland Utilities, L.P.

Justice WILLETT delivered the opinion of the Court.

Nicholas Traxler suffered injuries when he was struck by a power line belonging to Entergy Gulf States, Inc. After a jury verdict favorable to Traxler, the trial court rendered a judgment for him. The court of appeals reversed, holding that Entergy was not required to maintain the line at the height Traxler claimed was required by statute. Because we agree with Traxler's construction of the relevant statutes, we reverse the court of appeals' judgment and remand to that court for further proceedings.

## I. Background

Traxler was riding on top of a portion of a house that was being moved down a residential street in Bridge City, Texas. He was employed by Burkhart Moving Co. His job was to help remove obstructions encountered while the house was moving down the street. He was struck by a live power line belonging to Entergy. The line was about 20 feet from the ground, while the peak of the house's roof was about 17 feet from the ground. Traxler fell from the house and suffered injuries from the fall and from electrical shock.

Traxler sued Entergy and Burkhart, alleging several theories of negligence including negligence per se. Traxler settled with Burkhart prior to trial, but Burkhart's negligence was submitted to the jury. The negligence per se claim against Entergy was based on Traxler's claim that the line was less than 22 feet above the surface of the traffic lane as allegedly required by Section 181.045 of the Texas Utilities Code.

Question No. 1 of the jury charge asked whether the negligence of Entergy, Traxler, or Burkhart proximately caused injury to Traxler. General instructions on negligence, ordinary care, proximate cause, and new and independent cause were included with this question. With regard to the alleged negligence per se of Entergy, the jury was instructed that "negligence" also meant the failure to comply with a statutory requirement "that at any place where a transmission line crosses a highway or road it shall be at least twenty-two (22) feet above the surface of the traffic lane."

The jury found that Traxler, Burkhart, and Entergy were all negligent, assigning percentages of responsibility at 10%, 46%, and 44%, respectively. The trial court rendered a judgment for Traxler on the verdict, awarding actual damages, interest, and costs.

The court of appeals reversed and rendered a take-nothing judgment.[1] It agreed with Entergy that Section 181.045 did not apply because the line in question was a "distribution line" rather than a "transmission line," and only the latter is subject to the statutory 22–foot requirement.[2]

## II.  Discussion

### A.  Section 181.045

For a century the Legislature has imposed a 22–foot height requirement for power lines crossing roads. In 1911, it enacted a statute,[3] a portion of which was later revised slightly and designated Article 1436 of the Revised Civil Statutes.[4] Article 1436 stated that private electric utilities had the right to erect lines "over and across any public road ... in this State [and] any street or alley of any incorporated city or town in this State with the consent ... of such city or town." Article 1436 further provided that "[s]uch lines shall be ... maintained at a height above the ground of at least twenty-two feet." In 1936, this Court held that the sentence in Article 1436 containing the 22–foot requirement "applies to all power lines operated or maintained by power companies in this state."[5]

In 1949 the Legislature enacted Article 1436a,[6] a lengthy statute that retained a 22–foot requirement and, pertinent for our analysis today, introduced the words "transmission" and "distribution." It provided that corporations "engaged in the generation, *transmission and/or the distribution* of electric energy" may "erect, construct, maintain, and operate lines over, under, across, upon, and along any State highway or county road" as well as the "streets, alleys and other public property" of an incorporated city or town with the consent of such city or town.[7] It further stated:

> Except as modified or changed by ordinance or regulation in incorporated cities and towns, *all lines for the transmission and distribution* of electric energy, whether along highways or elsewhere, shall be constructed, operated and maintained, as to clearances, in accordance with the National Electrical Safety Code ... provided that *lines* along highways and county roads shall be single pole construction, and provided that at any place where a *transmission line* crosses a highway or road it shall be at least twenty-two (22) feet above the surface of the traffic lane.[8]

In 1951, we explained that the driving force behind the enactment of Article 1436a was a desire by the Legislature to supersede court decisions holding that commissioners' courts lacked the authority to permit utilities to use streets and alleys of unincorporated towns for their lines.[9] We also stated that, as a remedial and curative statute, Article 1436a should be

---

1.  320 S.W.3d 553, 560.

2.  *Id.* at 555–58.

3.  Act of March 25, 1911, 32d Leg., R.S., ch. 111, 1911 Tex. Gen. Laws 228.

4.  The Act was slightly revised and renumbered as part of a general non-substantive reorganization of Texas statutes. *See* Act of March 30, 1923, 38th Leg., R.S., ch. 159, 1923 Tex. Gen. Laws 338; Act of March 24, 1925, 39th Leg., R.S., ch. 104, 1925 Tex. Gen. Laws 282.

5.  *Texas–Louisiana Power Co. v. Webster,* 127 Tex. 126, 91 S.W.2d 302, 305 (1936).

6.  Act of May 19, 1949, 51st Leg., R.S., ch. 228, 1949 Tex. Gen. Laws 427.

7.  *Id.* at 427 (emphasis added).

8.  *Id.* (emphasis added).

9.  *City of Mason v. W. Tex. Utils. Co.,* 150 Tex. 18, 237 S.W.2d 273, 275, 279 (1951).

construed under the general rule that such statutes "be given the most comprehensive and liberal construction possible," and "certainly should not be given a narrow, technical construction."[10]

In 1959, a court of civil appeals considered a case involving an employee of a house moving company who, like Traxler, was riding on top of a house and was injured when he came in contact with a line carrying electric current.[11] The plaintiff relied on evidence that the line was less than 22 feet above the surface of the road. The power company offered witnesses claiming that only lines carrying electricity from town to town were "transmission lines," while the line in question was a "distribution line" carrying electricity to customers.[12] The court of civil appeals rejected this view and another technical definition of "transmission line,"[13] holding that, under Articles 1436 and 1436a, maintaining the line below 22 feet was negligence per se. The court held that the

> line was for all practical purposes a line for the transmission of electrical current, regardless of any technical view or theory, and that by reason thereof the maintenance of such line at a lower level

than 22 feet as provided in Articles 1436 and 1436a aforesaid, made such maintenance a violation of the statute, and that the light company was guilty of negligence in so doing as a matter of law.[14]

Relying on the rule that courts should ordinarily interpret statutory terms according to their common meaning, rather than employing a technical meaning, the court held that the words "transmission lines" under Articles 1436 and 1436a "mean any lines used to transmit electricity and not just those which are a part of the power or transmission system."[15] The court was "also of the view that our Texas Courts generally have applied the customary and usual meaning to the expression 'transmission lines' as used in [Article 1436a] rather than the technical definition used by" the power company.[16]

Two other courts of civil appeals then cited *Jacobs* with approval, although they did not directly address whether a distinction exists between transmission and distribution lines under Article 1436a. One stated in 1964 that Articles 1436 and 1436a impose the 22–foot clearance requirement on "all lines crossing public roads or streets."[17] The other stated in March

---

10. *Id.* at 280.

11. *Tex. Power & Light Co. v. Jacobs*, 323 S.W.2d 483, 487 (Tex.Civ.App.-Waco 1959, writ ref'd. n.r.e.).

12. *Id.* at 488.

13. The court also rejected the view that the line was not a transmission line because it was the neutral line returning current back to the source, rather than the hot line carrying current to the customer. *See id.* at 490–91.

14. *Id.* at 490.

15. *Id.* at 491.

16. *Id.*

17. *Tex. Power & Light Co. v. Holder*, 385 S.W.2d 873, 881 (Tex.Civ.App.-Tyler 1964) (citing *Jacobs* with approval), *writ ref'd n.r.e.*,

393 S.W.2d 821 (Tex.1965) (per curiam). In denying review, we stated that our disposition should not "be taken as an approval of the dictum in the opinion of the Court of Civil Appeals that lines *along* a street or highway must be twenty-two feet above the ground." 393 S.W.2d at 822 (emphasis in original). We were responding to language in the court of civil appeals' decision that "the maintenance of the electrical line along or across a road or street at a lower level than 22 feet" was a statutory violation, 385 S.W.2d at 880, presumably because Article 1436 imposed this height requirement for lines *"over and across"* roads and streets, rather than along them, and Article 1436a likewise imposed this height requirement "where a transmission line *crosses* a highway or road."

1967 that the 22–foot requirement in these statutes applies "to lines carrying electric current." [18]

In May 1967, Article 1436a was amended.[19] The 1967 Act referenced an updated National Code, added language pertaining to clearances over railroad tracks and sidings, and made other changes, but retained the relevant language quoted above.

In 1997, Article 1436a was codified [20] without substantive change [21] as Section 181.045 of the Utilities Code, which states in relevant part:

(a) A municipal electric utility shall construct, operate, and maintain its *lines for the transmission and distribution* of electric energy along highways and at other places in accordance with the national electrical safety code. With regard to clearances, an electric utility that is not a municipal electric utility shall construct, operate, and maintain its *lines for the transmission and distribution* of electric energy along highways and at other places in accordance with the national electrical safety code.

(b) Regardless of Subsection (a), an electric utility shall:

(1) use single pole construction for *a line* along a highway or county road;

(2) construct *a transmission line* that crosses a highway or road so that the line is at least 22 feet above the surface of the traffic lane; and

(3) construct *a line* that is above a railroad track or railroad siding so that the line is at least 22 feet above the surface of the track or siding.[22]

Traxler contends that the 22–foot requirement in Subsection (b)(2) of this statute applies to the line in question, and that failure to meet this requirement is negligence per se. Entergy does not dispute that a failure to comply with the 22–foot requirement is negligence per se, but contends that this statutory requirement does not apply because the line in question was a distribution line rather than a transmission line. Entergy argues that since Subsection (b) does not apply, the standards set forth in the National Electrical Safety Code apply, as stated in Subsection (a). Undisputed testimony at trial confirmed that for the location and voltage in issue, the clearance required under the Safety Code is 18.5 feet. Traxler, on the other hand, argues that transmission line and distribution line mean the same thing in this statute, and both terms refer to any line carrying an electric utility's current. We agree with Traxler.

Traxler offered expert testimony regarding the meaning of transmission and distribution lines. The expert, an electrical engineering professor, recognized a "technical or functional" distinction between the two. He stated that "[t]ransmission lines are the lines that come straight out of, say, a generating station or a large substation and just carry bulk power, large amounts of power over one line," while distribution lines usually refer to the "little lines" coming out of a substation that "distribute the power to individual houses." However, he testified that the terms have no fixed, widely recognized

---

18. *Lamb Cnty. Elec. Coop. v. Cockrell,* 414 S.W.2d 228, 230 (Tex.Civ.App.-Amarillo 1967, writ ref'd n.r.e.); *see also id.* at 231 (citing *Jacobs* with approval but distinguishing it).

19. Act of May 11, 1967, 60th Leg., R.S., ch. 306, 1967 Tex. Gen. Laws 730.

20. Act of May 8, 1997, 75th Leg., R.S., ch. 166, 1997 Tex. Gen. Laws 713.

21. *See id.* § 10, 1997 Tex. Gen. Laws at 1018 ("This Act is intended as a recodification only, and no substantive change in law is intended by this Act.").

22. Tex. Util. Code § 181.045 (emphasis added).

meaning, that the meanings of the terms vary from utility to utility, and that the meanings have changed over time. He testified that "there's no text you can go to" to define the terms.

■■■ Regardless of the expert testimony, the issue before us is one of statutory construction for the courts.[23] Our primary objective is to determine the Legislature's intent which, when possible, we discern from the plain meaning of the words chosen.[24] Moreover, we ordinarily rely on the common meaning of the words chosen by the Legislature, a preference we have described as cardinal law.[25]

■ The Legislature has directed courts to employ the common usage rule,[26] but has also directed that words in a statute be given a technical meaning if such a meaning has been acquired "by legislative definition or otherwise."[27] We decline to depart from our usual preference for relying on the common meaning of statutory terms. The words "distribution" and "transmission" are common words that are used frequently in everyday conversation and writing, and can mean the same thing in common parlance. For example, a well-

known dictionary defines "distribute" to mean "to deal out," "to spread or scatter," or "to place at different points," while it similarly defines "transmit" to mean "to send or pass on from one person or place or thing to another."[28] Black's Law Dictionary provides that "distribute" can simply mean "[t]o apportion" or "[t]o deliver," while "transmit" can mean to "[t]o send or transfer (a thing) from one person or place to another."[29] The Legislature surely understood the common, imprecise, and interchangeable meanings of these terms in normal usage and since 1947 has used the terms in the relevant statutes without defining or distinguishing them. Instead, it has repeatedly referred to "transmission and distribution" lines in the plural in one part of the statute, and "a transmission line" in another, without expressly indicating that transmission lines and distribution lines are two different things. It has amended and then codified the statute but has declined to include a statutory definition giving a more technical and distinguishing meaning to "transmission" and "distribution." If the Legislature intended to distinguish the terms, we believe it would have done so.

**23.** *See Atmos Energy Corp. v. Cities of Allen,* 353 S.W.3d 156, 160 (Tex.2011) ("The construction of a statute is a question of law that we review de novo.").

**24.** *City of San Antonio v. City of Boerne,* 111 S.W.3d 22, 25 (Tex.2003).

**25.** *See id.* ("We look first to the 'plain and common meaning of the statute's words.'" (quoting *State v. Gonzalez,* 82 S.W.3d 322, 327 (Tex.2002))); *In re Estate of Nash,* 220 S.W.3d 914, 917 (Tex.2007) ("If a statute is clear and unambiguous, we apply its words according to their common meaning without resort to rules of construction or extrinsic aids."); *McIntyre v. Ramirez,* 109 S.W.3d 741, 745 (Tex.2003); *Fitzgerald v. Advanced Spine Fixation Sys., Inc.,* 996 S.W.2d 864, 865 (Tex. 1999) ("[I]t is cardinal law in Texas that a court construes a statute, 'first, by looking to the plain and common meaning of the stat-

ute's words.'" (quoting *Liberty Mut. Ins. Co. v. Garrison Contractors, Inc.,* 966 S.W.2d 482, 484 (Tex.1998))).

**26.** Tex. Gov't Code § 311.011(a) ("Words and phrases shall be read in context and construed according to the rules of grammar and common usage.").

**27.** *Id.* § 311.011(b); *see also id.* § 312.002(b) ("If a word is connected with and used with reference to a particular trade or subject matter or is used as a word of art, the word shall have the meaning given by experts in the particular trade, subject matter, or art.").

**28.** Oxford American Dictionary 187, 731 (1980).

**29.** Black's Law Dictionary 487, 1505 (7th ed.1999).

Not only did the Legislature decline to give technical definitions distinguishing transmission and distribution lines, it used the terms interchangeably. The caption to the 1949 Act describes the Act as "An Act to facilitate and encourage the *distribution* of electric energy to the inhabitants of the small towns, villages and rural areas of the State of Texas by providing that lines for the *transmission* and transportation of electric energy may be constructed, erected and maintained on the right-of-way of roads and highways...."[30]

Our view is reinforced by previous court decisions. As described above, we held in 1951 that Article 1436a "certainly should not be given a narrow, technical construction," and in 1959 another appellate court, on similar facts, refused to construe the statute as drawing a technical distinction between transmission and distribution lines. The Legislature later amended and then codified the statute, but declined to supersede these decisions by providing technical or specific definitions to the terms "distribution line" and "transmission line." We presume the Legislature is aware of relevant caselaw when it enacts or amends statutes.[31] Further, "[i]t is a firmly established statutory construction rule that once appellate courts construe a statute and the Legislature re-enacts or codifies that statute without substantial change, we presume that the Legislature has adopted the judicial interpretation."[32] While this rule is not absolute,[33] it gives additional support to our decision. Entergy and amici curiae[34] argue that in amending Article 1436a in 1967, the Legislature disapproved of *Jacobs* by repealing the 22–foot requirement found in Article 1436. While we cannot say this argument is implausible, we ultimately do not agree with it. *Jacobs* was of the view that Article 1436a "does not specifically repeal Article 1436," but "make[s] it a little more specific in that it does provide that at any place where a transmission line crosses a highway or road it shall be at least 22 feet above the surface of the traffic lane."[35] We think that by deleting the 22–foot requirement of Article 1436, which referenced a "height above the ground" of 22 feet, the Legislature essentially agreed with *Jacobs* that Article 1436a provides a more refined reference to 22 feet "above the surface of the traffic lane," and the 1967 amendment served the purpose of eliminating any imprecision in Article 1436's clearance requirement and any in-

---

**30.** Act of May 19, 1949, 51st Leg., R.S., ch. 228, 1949 Tex. Gen. Laws 427, 427 (emphasis added).

**31.** *Gen. Servs. Comm'n v. Little–Tex Insulation Co.,* 39 S.W.3d 591, 596 (Tex.2001) ("[T]he Legislature is presumed to be aware of case law relevant to statutes it amends or enacts."); *Acker v. Tex. Water Comm'n,* 790 S.W.2d 299, 301 (Tex.1990) ("A statute is presumed to have been enacted by the legislature with complete knowledge of the existing law and with reference to it.").

**32.** *Grapevine Excavation, Inc. v. Md. Lloyds,* 35 S.W.3d 1, 5 (Tex.2000), *quoted with approval in Transcontinental Ins. Co. v. Crump,* 330 S.W.3d 211, 237–38 (Tex.2010).

**33.** *See, e.g., State Farm Life Ins. Co. v. Martinez,* 216 S.W.3d 799, 804 (Tex.2007) ("While we generally presume the Legislature accepts judicial interpretations of a statute by reenacting it without substantial change, we do not make that presumption when there have been substantial changes, or when it would contradict the statute's plain words." (footnotes omitted)).

**34.** AEP Texas North Co., AEP Texas Central Co., Southwestern Electric Power Co., and Sharyland Utilities, L.P.

**35.** 323 S.W.2d at 491; *see also Holder,* 385 S.W.2d at 881 ("One of the purposes of Article 1436a was to add an additional requirement requiring a clearance of 22 feet above the surface of the traffic lane regardless of the ground level.").

consistency between Articles 1436 and 1436a. This change probably was not needed, since the 1947 Act creating Article 1436a already provided: "All Statutes or parts of Statutes in conflict with the provisions of this Act are hereby expressly repealed." [36] Regardless, for our purposes the 1967 amendment did *not* supersede the essential reasoning and holding of *Jacobs* by providing specific or technical definitions for "transmission" and "distribution" lines or otherwise making clear that the terms bifurcate the universe of lines carrying current into two distinct and separate categories. The Legislature instead kept intact the language in Article 1436a referencing these terms, and thus apparently agreed with *Jacobs* that these terms should be given ordinary, non-technical meanings.

Accordingly, we reject Entergy's contention that the line in issue was not subject to the 22–foot requirement of Section 181.045(b)(2) because it was a distribution line as opposed to a transmission line. The court of appeals erred in so holding.

■ Entergy alternatively argues that the 22–foot requirement does not apply to the city street at issue because the requirement only applies to highways and county roads. We reject this construction because it conflicts with the plain wording of the statute. Section 181.045(b)(1) provides that a utility must "use single pole construction for a line along a highway or county road," but Subsection (b)(2) imposes the 22–foot height requirement wherever a transmission line "crosses a highway or road." This requirement as to roads is not limited to county roads. The current statute faithfully codifies Article 1436a, which likewise imposed the single pole construction requirement for lines along "along highways and county roads," but imposed the 22–foot height requirement "any place where a transmission line crosses a highway or road." The statute did not exempt city streets from this requirement and such an exemption cannot be gleaned under a common-meaning construction of "road." We have noted that "when the term 'roads' is used in statutes, unless from the context it appears to have been used in its specific sense, its generic meaning should be given." [37]

## B. Common–Law Negligence, *Casteel*, and Chapter 752

Traxler argues that the court of appeals erred in holding that liability against Entergy could not be imposed under a common-law theory that Entergy was negligent in advising movers they did not need to comply with Chapter 752 of the Health and Safety Code.

Section 752.003(a) of this Code requires persons or firms responsible for temporary activity or work closer to a high-voltage overhead line than "the distances prescribed by this chapter" to notify the operator of the line at least 48 hours before the work begins. Section 752.003(b) states that the work or activity covered by this section may not begin until the person or entity responsible for the work and the owner or operator of the line or both "have negotiated a satisfactory mutual arrangement [38] to provide temporary de-energization and grounding, temporary relocation

---

36. Act of May 19, 1949, 51st Leg., R.S., ch. 228, § 2, 1949 Tex. Gen. Laws 427, 429.

37. *Aransas Cnty. v. Coleman–Fulton Pasture Co.*, 108 Tex. 216, 191 S.W. 553, 554 (1917).

38. The parties disagree whether, in the circumstances presented, Chapter 752, and particularly the requirement of "negotiat[ing] a satisfactory mutual arrangement," imposed a duty only on the house mover or on both the mover and the utility to negotiate a mutual arrangement. We need not decide this question.

or raising of the line, or temporary mechanical barriers to separate and prevent contact between the line and the material or equipment or the person performing the work, activity, or function." Section 752.004(a) states that unless the person or entity responsible for the work has guarded against the danger of contacting the line as set forth in Section 752.003, the work, function, or activity may not be performed if it is possible that the person doing the work, function, or activity may "(1) move or be placed within six feet of a high voltage overhead line while performing the function or activity; or (2) bring any part of a tool, equipment, machine, or material within six feet of a high voltage overhead line while performing the function or activity." Section 752.004(b) states that a person or firm "may not require an employee to perform a function or activity prohibited by Subsection (a)." Section 752.005(1) provides that unless the person or entity effectively guards against danger as prescribed by Section 752.003, the person or entity may not transport all or any part of a house, building, or other structure within six feet of a high voltage overhead line. Section 752.007 provides that any person or firm who violates Chapter 752 is guilty of a criminal offense.

Traxler contends that Entergy negligently told house movers they did not need to contact Entergy if the load was under 17 feet in height. Traxler contends that Chapter 752 required the house mover and utility to negotiate a mutual arrangement whenever the house or a person would be coming within six feet of a power line, and Entergy's conduct amounted to common law negligence. The court of appeals held:

"Nothing in chapter 752 imposes a duty upon the owner or operator of a power line to insure that persons or entities performing work, functions, or activities within six feet of power lines comply with the requirements of that chapter." [39]

This theory of liability was an alternative to Traxler's claim that Entergy was negligent per se because its line was less than 22 feet above the road. In his briefing and at oral argument, Traxler's counsel stated that we do not need to reach this alternative theory of liability if we agree with Traxler on the applicability of the 22–foot requirement to this case.

However, as we understand Entergy's position, we need to address the Chapter 752 issue because it presents a *"Casteel* problem." In *Casteel*, we held: "When a single broad-form liability question erroneously commingles valid and invalid liability theories and the appellant's objection is timely and specific, the error is harmful when it cannot be determined whether the improperly submitted theories formed the sole basis for the jury's finding." [40] We see no *Casteel* problem insofar as the jury charge imposed a duty on Burkhart Moving under Chapter 752.[41] This instruction was requested by Entergy and worked to Entergy's benefit by imposing negligence per se liability on Burkhart if it failed to comply with Chapter 752. The jury assessed 46% of the responsibility for Traxler's injury on Burkhart. Neither Traxler nor Entergy contend that the jury charge erroneously imposed a duty on Burkhart Moving.

However, Entergy contends that a *Casteel* problem is presented because both the

---

39. 320 S.W.3d at 559.

40. *Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378, 389 (Tex.2000).

41. The charge, in the Question No. 1 broadform negligence question, instructed the jury:

"For purposes of this Question, 'negligence' on the part of Burkhart House Moving Company also means the failure to comply with Section 752.004 of the Texas Health and Safety Code." The instruction went on to set out provisions of Chapter 752.

negligence per se claim against Entergy (concerning the 22–foot requirement), and the common-law negligence claim against Entergy (concerning Entergy's alleged "do not call" policy) were invalid theories of liability. Entergy reasons that if *either* theory presented in the broad-form liability question is invalid, a *Casteel* problem is presented.

For the reasons explained above, Entergy does not persuade us that the negligence per se theory regarding the 22–foot requirement is an invalid theory of liability.[42] A *Casteel* error cannot be premised on this argument.

■ Traxler's common-law negligence theory was based on evidence that at a meeting an Entergy employee told Mr. Burkhart and other movers they did not need to call Entergy and make arrangements for safe passage near power lines if the load being moved was under 17 feet in height, even if the load or a person would be placed within six feet of the line as specified in Chapter 752. The evidence concerning exactly what was said and causation issues were contested at trial, but we do not agree with the court of appeals' reasons for concluding that this theory was an invalid theory of common-law negligence.

In its second point of error to the court of appeals, Entergy argued that as a matter of law Entergy owed no duty to insure that others complied with Chapter 752. It argued that generally there is no duty to control the conduct of others, and that liability could not be imposed under a theory that Entergy had undertaken to perform a service on Traxler's behalf. The court of appeals agreed with Entergy and sustained this point of error, without reaching other grounds for reversal raised by Entergy. The court reasoned that Entergy could not be held liable for common-law negligence under a theory of negligent undertaking. It concluded that Entergy could not be liable either under the theory that it undertook a duty to perform services for another or that it undertook a duty to control another.[43] Traxler's theory, however, was not based on a claim that Entergy undertook to perform services for another and did so negligently, or that it failed to control another under special circumstances where the law imposes a duty to control another. He alleged and offered evidence of common-law negligence under a theory encompassing the view that Burkhart had a statutory duty to contact Entergy and make arrangement for the safe passage of the house, and that Entergy through its affirmative conduct interfered with that duty and encouraged criminal noncompliance with Chapter 752, by stating at the above-described meeting that movers need not make arrangements with Entergy for safe passage under Chapter 752.[44] The arguments raised in Entergy's

---

42. *See Texas–Louisiana Power Co. v. Webster*, 127 Tex. 126, 91 S.W.2d 302, 304–05 (1936) (holding power company liable under statutory negligence theory for failure to comply with 22–foot requirement); *Jacobs*, 323 S.W.2d at 490 (holding that "the maintenance of such line at a lower level than 22 feet ... made such maintenance a violation of the statute, and ... the light company was guilty of negligence in so doing as a matter of law").

43. *See* 320 S.W.3d at 560 (citing *Loram Maint. of Way, Inc. v. Ianni*, 210 S.W.3d 593 (Tex.2006) and *Torrington Co. v. Stutzman*, 46 S.W.3d 829 (Tex.2000)).

44. The court of appeals noted that Traxler alleged in his petition that Entergy was "negligent in its instructions to local home movers," and argued in his brief that Entergy's employee "told the movers, in effect, that they could ignore the law." 320 S.W.3d at 555, 558. As Traxler's counsel summarized this theory of liability in closing argument:

[Entergy] knew ... that these home movers were getting within 6 feet of energized lines....

\* \* \*

To me, when [Entergy employee] Kyle Todd went out there to deal with these home movers to keep this problem from

second point of error to the court of appeals and addressed by that court do not persuade us that Traxler's theory of negligent misconduct by Entergy is an invalid theory of liability. Hence, we disagree with the court of appeals' holding that Traxler failed to present a valid common-law negligence claim, and we see no *Casteel* problem under the issues reached by the court of appeals.

### III. Other Issues and Disposition

Entergy urges numerous other grounds for reversal of the trial court judgment that were not reached by the court of appeals. We do not reach these issues but instead remand the case to the court of appeals to consider them in the first instance.

We reverse the court of appeals' judgment and remand the case to that court for further proceedings.

going up the ladder . . . he tells these people in violation of the law: You don't have to call. You do not have to call unless you're more than 17 feet.

Ladies and gentlemen [the charge and the law say] if you're going to be within 6 feet, you must call within 48 hours before you start the work. . . . If you don't, you can go to jail. You can have criminal penalties against you.

\*   \*   \*

Ladies and gentlemen, I submit to you that that's negligent.