

# Fourth Court of Appeals
## San Antonio, Texas

## OPINION

No. 04-13-00162-CV

**IN THE INTEREST OF D.I.P.**, a Child

From the 285th Judicial District Court, Bexar County, Texas
Trial Court No. 2012-PA-02336
Honorable John D. Gabriel, Jr., Judge Presiding

Opinion by:  Rebeca C. Martinez, Justice

Sitting:  Catherine Stone, Chief Justice
Rebeca C. Martinez, Justice
Patricia O. Alvarez, Justice

Delivered and Filed:  October 9, 2013

REVERSED AND RENDERED

Clarissa S. appeals an order terminating the parent-child relationship between her son, D.I.P., and her former boyfriend, Jonathan P.  We reverse the judgment of the trial court and render judgment vacating the order of termination.

## BACKGROUND

D.I.P. was born to Clarissa on October 19, 1998.  At the time of D.I.P.'s birth, Clarissa and Jonathan were dating and had been since 1997.  After the birth, Jonathan signed an acknowledgement of paternity and was listed as the father on D.I.P.'s birth certificate.  The couple resided together for the next two years, but broke up after Jonathan discovered that Clarissa was cheating on him.  As D.I.P. grew, Jonathan began to question whether he was D.I.P.'s biological father.  His concerns arose due to Clarissa's history of being involved in other romantic

relationships while she was dating him, and the fact that he began to notice that D.I.P.'s physical features were different from his. In 2005, Jonathan conducted his own DNA test using a mail order kit, the results of which revealed that he was not the genetic father of D.I.P. When Jonathan confronted Clarissa with the test results, she told him that the test was wrong, and that he must have performed it incorrectly; she assured him that he was D.I.P.'s father. Jonathan believed her, but still had concerns as to whether the test was properly conducted. Thereafter, Clarissa requested that Jonathan pay child support and Jonathan signed a second acknowledgement of paternity in 2006. In 2009, the child support order was modified, and Jonathan again acknowledged paternity.

On September 28, 2012, Jonathan filed an Original Petition to Terminate Parent-Child Relationship Based on Mistaken Paternity. Section 161.005(c) of the Texas Family Code permits a man to terminate the parent-child relationship if paternity previously was established without the benefit of genetic testing and a misrepresentation caused the man to believe that he fathered the child. *See* TEX. FAM. CODE ANN. § 161.005(c) (West Supp. 2012); *In re C.E.*, 391 S.W.3d 200, 202 (Tex. App.—Houston [1st Dist.] 2012, no pet.); *see also* TEX. FAM. CODE ANN. § 160.503(a) (West 2008) (specifying requirements for genetic testing). In his petition and supporting affidavit, Jonathan claimed that he discovered he was not the child's genetic father on August 29, 2012 when he took a voluntary paternity test. He alleged that he was mistakenly named as D.I.P.'s legal father because: "a judge made a court order naming me as the legal father of the child; I did not get genetic testing before the judge made the order; and I did not contest parentage because, at the time the judge made the order, I mistakenly believed that I was the child's genetic father[.]"

At the pre-trial hearing to determine whether genetic testing should be ordered, Jonathan testified that Clarissa misrepresented to him that he was D.I.P.'s biological father, but could not cite a single conversation or action by Clarissa to support such a belief. Jonathan admitted that

Clarissa never denied to him that someone else could be the father of D.I.P., but Clarissa testified that Jonathan never asked her whether someone else could be D.I.P.'s father.

At the conclusion of the hearing, the trial court ordered that genetic testing be conducted on Jonathan and D.I.P. Clarissa filed a motion for reconsideration, which was denied after a hearing. The results of the court-ordered genetic testing excluded Jonathan as the genetic father of D.I.P.[1] Therefore, on February 6, 2013, the trial court signed an order terminating Jonathan's parental rights to D.I.P.[2] Clarissa timely appealed.

### DISCUSSION

On appeal, Clarissa first argues that the trial court erred in allowing Jonathan to obtain genetic testing because his suit to terminate was barred by the statute of limitations due to the fact that it was filed more than one year after the date he became aware that he was not D.I.P.'s genetic father. Texas Family Code section 161.005 permits a man to sue to terminate his parental rights under certain circumstances. TEX. FAM. CODE ANN. § 161.005(c). With exceptions inapplicable here, section 161.005(c) provides:

> [A] man may file a suit for termination of the parent-child relationship between the man and a child if, without obtaining genetic testing, the man signed an acknowledgment of paternity of the child . . ., or was adjudicated to be the father of the child in a previous proceeding under this title in which genetic testing did not occur. The petition must be verified and must allege facts showing that the petitioner:
>     (1) is not the child's genetic father; and
>     (2) signed the acknowledgment of paternity or failed to contest parentage in the previous proceeding because of the mistaken belief, at the time the acknowledgment was signed or on the date the court order in the previous proceeding was rendered, that he was the child's genetic father based on misrepresentations that led him to that conclusion.

---

[1] Clarissa also filed a motion to strike Jonathan's pleadings and affidavit, alleging they were fraudulent because he failed to plead that he took a voluntary DNA test in 2005; the motion to strike was denied by the trial court.

[2] The termination order provides that Jonathan may have possession of D.I.P. on the first Saturday of every month.

*Id.* Section 161.005(c) requires that the man signed the prior acknowledgement of paternity based on a mistaken belief that he fathered the child. *Id.*; *In re C.E.*, 391 S.W.3d at 202. In addition, that belief must be based on a misrepresentation. *In re C.E.*, 391 S.W.3d at 202.

Subsection (f) requires the trial court to hold a pre-trial hearing to determine whether the father has established a "meritorious prima facie case for termination of the parent-child relationship." TEX. FAM. CODE ANN. § 161.005(f). If the trial court finds that the man has established a prima facie case for termination, the trial court shall order the petitioner and child to submit to genetic testing. *Id.* If the results of the court-ordered genetic testing exclude the petitioner as the child's genetic father, the court "shall" render an order terminating the parent-child relationship. *Id.* § 161.005(h). A determination of whether a party has presented prima facie proof of a meritorious claim is a question of law that we review de novo. *See In re C.E.*, 391 S.W.3d at 203.

Subsection (e), which became effective September 1, 2012, mandates that a petition under subsection (c) be filed no later than the first anniversary of the date on which the man becomes aware of facts indicating that the man is not the child's genetic father. TEX. FAM. CODE ANN. § 161.005(e).[3] Jonathan filed his petition on September 28, 2012. Clarissa maintains that Jonathan first became aware of facts indicating that he was not D.I.P.'s biological father in 2005, when he conducted a voluntary paternity test to assuage his concern that D.I.P. did not physically resemble him. Thus, she argues that section 161.005(e) barred Jonathan from filing his petition to terminate because Jonathan filed the petition outside the one-year limitations period provided by the statute. *See id.* Jonathan responds that his petition was timely filed because he found out that he was not

---

[3] Subsection (e-1), which expired on September 1, 2013, provided: "Subsection (e) applies beginning September 1, 2012. Before that date, a petition may be filed under Subsection (c) regardless of the date on which the petitioner became aware of the facts alleged in the petition indicating that the petitioner is not the child's genetic father." TEX. FAM. CODE ANN. § 161.005(e-1) (West Supp. 2012).

D.I.P.'s genetic father on August 29, 2012 when voluntary paternity testing confirmed that he was not the child's biological father, and he filed his petition a month afterward.

The record before us reflects that Jonathan became aware of facts indicating that he was not D.I.P.'s father well before August 29, 2012, and certainly more than a year before filing his petition under section 161.005(c). Although Jonathan alleged in his petition that he "found out" that he was not D.I.P.'s biological father on August 29, 2012 after receiving the results of a voluntary paternity test, he testified that he conducted a similar voluntary genetic test in 2005 due to suspicions that he was not the child's genetic father, thus admitting that he was aware of facts indicating that he was not D.I.P.'s biological father as early as 2005. The results of the 2005 test excluded him as the genetic father, but Jonathan was apparently pacified by Clarissa's insistence that the test was inaccurate. In neither his petition nor his testimony before the trial court, however, did Jonathan explain what, if anything, occurred to make him conduct a second genetic test in 2012.

Although no other court has yet to interpret section 161.005(c) together with the applicable limitations period contained in subsection (e), the plain statutory language makes clear that petitions to terminate based on mistaken paternity must be filed within one year of the date the petitioner becomes aware of facts indicating he is not the child's genetic father. *See In re Lambert*, 993 S.W.2d 123, 127 (Tex. App.—San Antonio 1999, orig. proceeding) (when interpreting statutes, words must be given their plain meaning unless they are given a particular meaning by statutory definition or otherwise); *see also Traxler v. Entergy Gulf States, Inc.*, 376 S.W.3d 742, 747 (Tex. 2012). Certainly, section 161.005(e) was intended to prohibit acknowledged and adjudicated fathers from filing petitions to terminate based on mistaken paternity in cases such as the one before us, where the father became aware of facts that indicated the child was not biologically his own—due to differences in physical appearance, his former girlfriend's history of

infidelity, and the results of a voluntary genetic test excluding him as the biological father—but waited seven years before filing the petition to terminate.

Jonathan appears to argue that the 2005 genetic test should not be considered for purposes of determining when he became "aware" that he lacked paternity because the results of that test were not competent evidence, i.e., there was no evidence that: the results had a proper chain of custody, were conducted by an expert in the area of genetic testing, and could be relied on to prove that Jonathan was not D.I.P.'s father. However, nothing in the statute mandates that awareness of facts indicating lack of paternity be based on bona fide genetic testing. To the contrary, the statute in no way specifies by what means awareness may be garnered. Further, the statute provides that the petitioner must allege facts "*indicating* that the petitioner is not the child's genetic father." TEX. FAM. CODE ANN. § 161.005(e) (emphasis added); *see also Traxler*, 376 S.W.3d at 747 (courts should rely on common meaning of statutory terms when possible). There is no requirement that lack of paternity be conclusively *established* prior to filing the petition to terminate the parent-child relationship. In fact, the statute particularly envisions that the allegations contained in a petition under section 161.005(c) are preliminary, and are subject to a pretrial hearing to determine whether the petitioner has presented a "meritorious prima face case" for termination of the parent-child relationship. *See* TEX. FAM. CODE ANN. § 161.005(f). "The prima facie standard requires only the minimum quantum of evidence necessary to support a rational inference that the alleged fact is true." *In re C.E.*, 391 S.W.3d at 203. Thus, we disagree that the awareness contemplated in section 161.005(e) must be established by means of verified genetic testing.[4] Section 161.005(e)

---

[4] Even if we were to accept Jonathan's proposition that awareness of facts indicating lack of paternity under section 161.005(e) must be obtained through verifiable genetic testing, his suit would still be barred by limitations because he alleged that his awareness of lack of paternity arose from an August 2012 *voluntary mail-order* paternity test, as opposed to a court-ordered or other verifiable genetic test.

merely provides that the awareness—however it arises—must arise within one year of filing the petition to terminate. Accordingly, we conclude that the voluntary paternity test Jonathan conducted in 2005 made him sufficiently aware of facts indicating that he was not D.I.P.'s biological father. As a result, the petition to terminate he filed seven years later was untimely pursuant to the one-year limitations period provided by section 161.005(e). *See* TEX. FAM. CODE ANN. § 161.005(e).[5]

## CONCLUSION

Because Jonathan was time-barred from filing a petition to terminate under section 161.005(c), the trial court erred in ordering genetic testing, and in subsequently rendering judgment terminating the parent-child relationship between Jonathan and D.I.P. based on the results of the genetic testing. Therefore, we reverse the judgment of the trial court terminating the parent-child relationship between Jonathan and D.I.P., and render judgment vacating the order of termination. Based on our disposition, we need not address the remainder of Clarissa's issues on appeal. *See* TEX. R. APP. P. 47.1.

Rebeca C. Martinez, Justice

---

[5] Jonathan also argues that Clarissa (1) waived her complaints on appeal by failing to seek mandamus relief from the order granting genetic testing and (2) "invited error" by informing the trial court that she consented to genetic testing. First, while we agree that it may have been procedurally more efficient to file a petition for writ of mandamus once the order granting genetic testing was rendered, we cannot conclude Clarissa waived her appeal by failing to do so. Clarissa filed a motion for reconsideration immediately after the order for genetic testing was rendered, and properly preserved her complaint for appeal. *See* TEX. R. APP. P. 33.1(a). Further, Jonathan provides no support for his assertion that an order granting genetic testing under section 161.005 may only be attacked by mandamus. Second, we cannot conclude that Clarissa "invited error." At the hearing, the trial court asked Clarissa, "[A]re you objecting today to this Court ordering DNA testing?" Clarissa answered, "No." Although we are doubtful that Clarissa's concession met the elements for waiver, *see Perry Homes v. Cull*, 258 S.W.3d 580, 602-03 (Tex. 2008), we need not address whether Clarissa invited error and consented to genetic testing due to our conclusion that Jonathan's suit to terminate was time-barred under section 161.005(e). *See* TEX. FAM. CODE ANN. § 161.005(e).