

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-12-00171-CV

THE TOWN OF ANNETTA SOUTH, TEXAS; GERHARD KLEINSCHMIDT; JAMES ABLOWICH; PHILLIP KUNTZ; AND DAVID GOOLSBY

APPELLANTS/APPELLEES

V.

SEADRIFT DEVELOPMENT, L.P.

APPELLEE/APPELLANT

----------

FROM THE 415TH DISTRICT COURT OF PARKER COUNTY
TRIAL COURT NO. CV11-0220

----------

## DISSENTING OPINION

----------

This cross-appeal requires this court to determine whether a municipality's minimum lot size requirement, when applied to property within the municipality's

extraterritorial jurisdiction (ETJ), [1] violates a local government provision that prohibits a municipality from regulating the number of residential units that can be built per acre of land within its ETJ. Because I conclude that the ordinance at issue does not violate the local government code, I respectfully dissent.

Local government code section 212.002 provides that a municipality may adopt rules governing plats and subdivisions of land within its jurisdiction.[2] When a municipality adopts rules under section 212.002, section 212.003 authorizes it to apply those rules to the territory in its ETJ.[3] Not every municipal ordinance adopted under section 212.002 may be extended into the ETJ, however, and section 212.003 also includes a list of what municipalities may *not* regulate in their ETJ.[4] And under that section, unless otherwise authorized by state law, a municipality may not regulate "the number of residential units that can be built per acre of land."[5]

---

[1] *See City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 26 (Tex. 2003) ("Extraterritorial jurisdiction refers to 'the unincorporated area that is contiguous to the corporate boundaries of the municipality' and is located within a specified distance of those boundaries, depending upon the number of inhabitants within the municipality.").

[2] Tex. Loc. Gov't Code Ann. § 212.002 (West 2008).

[3] *Id.* § 212.003(a).

[4] *Id.*

[5] *Id.* § 212.003(a)(4).

Seadrift argued in its summary judgment motion that by adopting the limitations in 212.003(a), "the Legislature was prohibiting municipalities from limiting residential density in a town's extraterritorial jurisdiction." It contended that the Town's ordinance would prohibit it from putting more than one detached single-family home on a single lot. It then asserted that because this ordinance requires two-acre lots and because other ordinances of the Town prohibit putting more than one detached single-family home on each lot, the Town's ordinance was merely a method for it to do what was otherwise prohibited by state law: limit the density of residential development. The trial court agreed with Seadrift, as does the majority of this panel.

I see two problems with Seadrift's density argument. First, the local government code shows that the legislature knows how to say "density" when it means density. As the Town points out, in the local government code section setting out generally what zoning regulations a municipality may make, it states that a municipality may regulate "population density."[6] And while the zoning regulations allowed under section 211.003 are remarkably similar to the regulations not allowed to be imposed in the municipality's ETJ under section 212.003, the legislature chose not to make these provisions identical. It did not transfer the "population density" language of section 211.003 to the restrictions in section 212.003. If the legislature had intended to prohibit under section 212.003

---

[6] *Id.* § 211.003(a)(4).

all of the regulations discussed in section 211.003, it could have easily done so. Instead, it chose to prohibit under 212.003 only *some* of the kinds of regulations listed in section 211.003. It could have used the term "population density" in section 212.003, as it did in section 211.003, but it chose not to.

The second problem with Seadrift's density argument is that this ordinance does not regulate population density. That is, even if section 212.003 contained a prohibition on regulating density, the ordinance would not violate it. Texas law treats a condominium unit, a townhouse, and an apartment unit as a "residential unit."[7] As Seadrift conceded at oral argument, nothing in the Town's ordinances stopped it from putting multifamily homes on its property. Thus, as Seadrift concedes, the lot-size ordinance does not regulate how many residential units Seadrift may put on each acre.

Perhaps in adopting section 212.003, the legislature intended to prevent municipalities from regulating lot size or building density in its ETJ. But that is not what the statute says, and that is not what the context of the statute

---

[7] *See, e.g.*, Tex. Loc. Gov't Code Ann. § 214.1955(a) (West 2008) ("A municipality may not refuse to issue an alarm system permit for a residential location solely because the residential location is an individual residential unit located in a multiunit housing facility."); Tex. Prop. Code Ann. § 12.017(b)(1) (West Supp. 2014) ("This section applies only to a mortgage on: (1) property consisting exclusively of a one-to-four-family residence, including a residential unit in a condominium regime."), § 62.003(2)(A)(B) (West 2007) (stating that the term "[c]ommercial real estate" does not include "real estate improved with one to four residential units" or "a single-family residential unit, including a condominium, townhouse, or home in a subdivision, if the unit is . . . conveyed on a unit-by-unit basis and regardless of whether the unit is part of a larger building or located on real estate containing more than four residential units").

4

suggests. The plain language of section 212.003 prohibits regulation of the number of residential units per lot.[8] The plain language of the Town's ordinance regulates lot size.

The ordinance stops Seadrift from developing the property in the way it would prefer. Section 212.003, however, does not give a developer carte blanche to develop land in an ETJ for whatever use it would prefer. The limit on the number of residential units that Seadrift may put on its property is the result of Seadrift's own choice to build only single-family homes. I would hold that the trial court erred by declaring that the Town's ordinance setting out a minimum lot size in its ETJ violated state law and by granting summary judgment for Seadrift on that basis.

The majority opinion states that "although multiple duplexes, triplexes, and apartment complexes may technically be built on a single two-acre lot in the Town's ETJ, they can never be individually sold."[9] I disagree with the majority's emphasis on buyers as opposed to residents. If a developer may put apartments on a two-acre lot, then the ordinance is not limiting density just because the apartment units all have the same owner. Density does not depend on how many individual properties can be *sold* from a two-acre tract. Density depends

_____

[8] *See Traxler v. Entergy Gulf States, Inc.*, 376 S.W.3d 742, 747 (Tex. 2012) (looking at a statute's plain and common meaning of the statute's words to discern the intent of the statute).

[9] Majority op. at 10.

5

on how many residents could *live* there.  Because nothing in the ordinance limits the number of residents who may reside on a two-acre lot, the ordinance does not regulate density.  I would sustain the Town's first issue and render judgment that Seadrift take nothing on its suit.

/s/ Lee Ann Dauphinot
LEE ANN DAUPHINOT
JUSTICE

DELIVERED:  September 25, 2014

6