# Supreme Court of Texas

No. 26-0077

In the Interest of K.L.B., a Child

On Petition for Review from the
Court of Appeals for the Seventh District of Texas

JUSTICE SULLIVAN, joined by Justice Young, concurring in the denial of the petition for review.

I concur in today's decision to deny review because Mother isn't entitled to relief from the trial court's judgment terminating her parental rights. Given that this case involves the civil death penalty, however, one issue deserves a few extra words. *In re D.T.*, 625 S.W.3d 62, 69 (Tex. 2021). Mother argues that the trial court should've granted her a 180-day extension of the automatic-dismissal date so she could complete her service plan. *See* Tex. Fam. Code § 263.401. Although the court of appeals was right to find no error in that decision, it was wrong to rely on cases decided under an old version of the extension statute.

**I**

Section 263.401 of the Family Code imposes a one-year deadline for commencing trial in a parental-termination suit, at which point the suit is automatically dismissed and the trial court loses subject-matter

jurisdiction. Tex. Fam. Code § 263.401(a). A trial court can extend the dismissal date by 180 days if it finds both that "extraordinary circumstances necessitate the child remaining in" substitute care, and that it's "in the best interest of the child" to stay there. *Id.* § 263.401(b).

Courts of appeals long held that "when a parent, through his or her own choices, fails to comply with a service plan and then at the time of the termination trial requests a continuance or an extension of the statutory dismissal deadline in order to complete the plan, the trial court does not abuse its discretion by denying the continuance or extension." *In re K.P.*, No. 02-09-00028-CV, 2009 WL 2462564, at *4 (Tex. App.—Fort Worth Aug. 13, 2009, no pet.); *see also, e.g.*, *In re D.R.*, 631 S.W.3d 826, 837 (Tex. App.—Texarkana 2021, no pet.); *In re A.S.*, No. 12-16-00104-CV, 2016 WL 5827941, at *2 (Tex. App.—Tyler Sep. 30, 2016, no pet.); *In re B.M.*, No. 13-17-00467-CV, 2017 WL 5953098, at *10 (Tex. App.—Corpus Christi–Edinburg Nov. 30, 2017, pet. denied). Thus, lower courts used to say that "[a]ctions that are considered to be the parent's fault will generally not constitute an extraordinary circumstance." *In re A.B.*, No. 07-19-00180-CV, 2019 WL 5199299, at *4 (Tex. App.—Amarillo Oct. 15, 2019, no pet.) (internal quotation marks omitted).

But that approach has been largely overtaken by events in the Legislature, which we presume is aware of relevant judicial decisions. *Traxler v. Entergy Gulf States, Inc.*, 376 S.W.3d 742, 748 (Tex. 2012). In 2019, the Legislature added Subsection (b-2) to Section 263.401, which requires that if a service plan includes a substance-abuse treatment program, then the trial court "shall consider whether the parent made a good faith effort to successfully complete the program" in determining

2

whether to make an extraordinary-circumstances finding. Act of May 22, 2019, 86th Leg., R.S., ch. 783, § 1, 2019 Tex. Gen. Laws 2228, 2228. So, at least in substance-abuse cases, the analysis must now focus on whether the parent made a good-faith effort to complete the program, rather than on his relative responsibility for not doing so. This is a subtle yet important change of focus.

In 2021, the Legislature went a step further by making the extraordinary-circumstances finding mandatory for certain cases. Act of April 28, 2021, 87th Leg., R.S., ch. 8, § 9, 2021 Tex. Gen. Laws 10, 15. Under the new Subsection (b-3), a trial court must make such a finding if (1) the parent made a good-faith effort to complete the service plan and (2) DFPS's permanency goal is reunification. Tex. Fam. Code § 263.401(b-3); *see also id.* § 263.3026(a). This good-faith-effort provision applies in all parental-termination cases, not just in the substance-abuse cases that Subsection (b-2) covers.

The Legislature also did away with the oft-abused Paragraph (O), pursuant to which strict compliance with a court-ordered service plan used to be necessary to avoid termination of a parent–child relationship. *See* Tex. Fam. Code § 161.001(b)(1)(O) (2023), *repealed by* Act of May 14, 2025, 89th Leg., R.S., ch. 211, § 2, 2025 Tex. Gen. Laws 573, 573–76. In 2017, the Legislature made a parent's good-faith effort to comply with a service plan an affirmative defense to termination on that basis. Act of May 26, 2017, 87th Leg., R.S., ch. 317, § 12, 2017 Tex. Gen. Laws 612, 616 (codified at Tex. Fam. Code § 161.001(d)). And in 2025, the Legislature repealed the old Paragraph (O) altogether. Act of May 14, 2025, 89th Leg., R.S., ch. 211, § 2, 2025 Tex. Gen. Laws 573, 573–76.

3

The bottom line is that making the extraordinary-circumstances finding is no longer a purely discretionary decision, and opinions that held otherwise are no longer good law.

## II

Here, the court of appeals saw no abuse of discretion in the trial court's decision to deny Mother an extension because a "parent's voluntary failure to complete a service plan generally does not constitute extraordinary circumstances." No. 07-25-00195-CV, 2025 WL 3701025, at *3–4 (Tex. App.—Amarillo Dec. 19, 2025) (citing *In re D.R.*, 631 S.W.3d at 837). That reasoning leaves something to be desired.

For starters, the court of appeals skipped the question whether an extraordinary-circumstances finding was mandatory or discretionary. Relying on an old precedent, the court simply assumed that the finding was discretionary. Now it happens that Mother wasn't entitled to the mandatory extension, but that's because DFPS's permanency goal was adoption rather than reunification. *See* Tex. Fam. Code § 263.401(b-3)(2).

The court of appeals also focused on the wrong thing, analyzing whether Mother's failure to complete her service plan was "voluntary." In a substance-abuse case like this one, the court instead had to "consider" whether Mother made a good-faith effort to complete her substance-abuse program. *Id.* § 263.401(b-2). On these facts, she probably didn't. Mother "waited approximately ten months after removal" before she started working services. 2025 WL 3701025, at *4. And even after she did start, she only sporadically participated in drug treatment and faced potential "discharge for non-compliance." *Id.*

4

To be clear, this doesn't mean that any delay or interruption in working services negates good faith. There are good reasons a parent might not complete a service plan by the initial dismissal date. Parents often face waitlists to get into the programs that their service plans require, as occurred in another case decided today. *In re H.S.*, ___ S.W.3d ___ (Tex. June 5, 2026). Some parents have difficulty attending the programs while also fulfilling their separate obligation to maintain stable housing and employment. And parents struggling with addiction face the added hurdle that recovery from substance abuse isn't a linear process. But what the court must consider for extraordinary-circumstances purposes is whether the parent has been making good-faith efforts toward completing the services—not whether her failure to do so was voluntary. *See* Tex. Fam. Code § 263.401(b-2).

Several other courts of appeals have also relied on old precedents that were abrogated by the 2021 statutory change. *See In re L.W.R.L.*, No. 09-24-00256-CV, 2025 WL 242937, at *12 (Tex. App.—Beaumont Jan. 16, 2025, pet. denied) (citing *In re A.S.*, 2016 WL 5827941, at *2); *In re K.T.*, No. 02-24-00352-CV, 2024 WL 4898796, at *2 (Tex. App.—Fort Worth Nov. 27, 2024, pet. denied) (citing *In re I.B.*, No. 02-21-00358-CV, 2022 WL 1257133, at *3 (Tex. App.—Fort Worth Apr. 28, 2022, no pet.)); *In re C.J.B.*, No. 10-24-00002-CV, 2024 WL 2206169, at *3–4 (Tex. App.—Waco May 16, 2024, no pet.) (citing *In re K.P.*, 2009 WL 2462564, at *11–12). But the law's the law. The 2021 change didn't end up making a difference here, but it will in other cases.

*     *     *

Though the court of appeals reached the right decision here, I hope that, in the future, lower courts will take care not to rely on judicial opinions that've been abrogated by statute.

 

James P. Sullivan
Justice

**OPINION FILED:** June 5, 2026