ACCEPTED
03-14-00713-CV
6651692
THIRD COURT OF APPEALS
AUSTIN, TEXAS
8/25/2015 8:06:11 PM
JEFFREY D. KYLE
CLERK

No. 03-14-00713-CV

# In the Court of Appeals
# for the Third Judicial District
# Austin, Texas

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
9/2/2015 2:04:11 PM
JEFFREY D. KYLE
Clerk

GLENN HEGAR, COMPTROLLER OF PUBLIC ACCOUNTS OF THE STATE OF TEXAS, AND
KEN PAXTON, ATTORNEY GENERAL OF THE STATE OF TEXAS,
*Appellants*,

v.

CGG VERITAS SERVICES (U.S.), INC.,
*Appellee.*

On Appeal from the
353rd Judicial District Court of Travis County, Texas

## APPELLANTS' REPLY BRIEF

KEN PAXTON
Attorney General of Texas

CHARLES E. ROY
First Assistant Attorney General

OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1729
Fax: (512) 474-2697

SCOTT A. KELLER
Solicitor General

JOSEPH D. HUGHES
Assistant Solicitor General
State Bar No. 24007410
*jody.hughes@texasattorneygeneral.gov*

AUTUMN HAMIT PATTERSON
Assistant Attorney General
State Bar No. 24092947

COUNSEL FOR APPELLANTS

# TABLE OF CONTENTS

Index of Authorities..................................................................................................iii

Argument......................................................................................................................2

    I.     CGG Misframes the Inquiry. ..........................................................................2

          A.    This Appeal Involves Statutory Construction, a Question of Law. ...................................................................................................2

          B.    Section 171.1012 Determines Whether an Entity's Costs Qualify for the Cost of Goods Sold Deduction................................3

               1.    CGG's "threshold inquiry" contradicts the statute...............3

               2.    Section 171.1012(i)'s "labor or materials" provision does not allow a deemed owner of labor or materials to take a COGS deduction for costs other than for "that labor or materials."...........................................4

               3.    *Newpark Resources* supports the Comptroller's construction...........................................................................6

                4.    Estoppel is not a valid method of statutory construction...........................................................................7

           C.    It Was CGG's Burden to Prove the Eligibility of Its Claimed Costs.............................................................................................8

    II.    CGG's Seismic-Data Costs Are Not Eligible for the COGS Deduction Because CGG Produces No "Goods."....................................11

          A.    CGG Provides a Service; It Does Not Sell Tangible Property. .....................................................................................12

                1.    CGG's seismic data is intangible property. ..........................13

                2.    CGG uses its seismic data to provide its clients with seismic maps representing CGG's opinion regarding the underground topography.................................13

B.      CGG's Concessions Make It Unnecessary for the Court to Address the Parties' Arguments Regarding Section 171.1012(a)(3)(A)(ii)...............................................................16

III.     CGG Is Not a Deemed Owner of Goods Under Section 171.1012(i) and Cannot Qualify for That Section's Narrow "Labor or Materials" Exception....................................................................17

A.      CGG's Provision of Sophisticated Data-Processing Services Is Not "Furnishing Labor or Materials."............................................18

1.      CGG is not furnishing "labor." ...........................................18

2.      The cost of CGG's seismic services can be deducted by drilling companies but not CGG....................................21

B.      CGG's Seismic Data Is Not Furnished to a Construction Project. ...............................................................................................22

C.      CGG Cannot Legitimately Claim That All of Its Costs Are for "Labor or Materials." ..................................................................25

Prayer..........................................................................................................................25

Certificate of Service ................................................................................................27

Certificate of Compliance ........................................................................................27

# INDEX OF AUTHORITIES

## Cases

*Alon USA, LP v. State,*
    222 S.W.3d 19 (Tex. App.—Austin 2005, pet. denied) .................................................9

*Bullock v. Foley Bros. Dry Goods Corp.,*
    802 S.W.2d 835 (Tex. App.—Austin 1991, writ denied)............................................10

*Combs v. Newpark Res., Inc.,*
    422 S.W.3d 46 (Tex. App.—Austin 2013, no pet.) ................................................*passim*

*Leordeanu v. Am. Protection Ins. Co.,*
    330 S.W.3d 239 (Tex. 2010)...................................................................................21-22

*TGS-NOPEC Geophysical Co. v. Combs,*
    340 S.W.3d 432 (Tex. 2011) ........................................................................................13

*Titan Transp. v. Combs,*
    433 S.W.3d 625 (Tex. App.—Austin 2014, pet. denied) ...................................... 2, 23

*Traxler v. Entergy Gulf States, Inc.,*
    376 S.W.3d 742 (Tex. 2012) ........................................................................................11

*Upjohn Co. v. Rylander,*
    38 S.W.3d 600 (Tex. App.—Austin 2000, pet. denied) ...............................................11

## Statutes

TEX. TAX CODE § 111.008(a) ...............................................................................................9

TEX. TAX CODE § 112.052(d) ...............................................................................................9

TEX. TAX CODE § 171.1011(g)(3) .......................................................................................24

TEX. TAX CODE § 171.1012(3)(B) .......................................................................................14

TEX. TAX CODE § 171.1012(3)(B)(ii).................................................................................. 14

TEX. TAX CODE § 171.1012(a)(1).............................................................................3, 11, 14

TEX. TAX CODE § 171.1012(a)(3)(A)(i) ...................................................................11

TEX. TAX CODE § 171.1012(a)(3)(A)(i)-(iii) ............................................................3

TEX. TAX CODE § 171.1012(a)(3)(A)(ii) .............................................11-12, 15-17

TEX. TAX CODE § 171.1012(a)(3)(A)(iii) ...............................................................11

TEX. TAX CODE § 171.1012(a)(3)(B) .......................................................................3

TEX. TAX CODE § 171.1012(b) ................................................................................4

TEX. TAX CODE § 171.1012(c) .................................................................................6

TEX. TAX CODE § 171.1012(c)-(f) ...........................................................................4

TEX. TAX CODE § 171.1012(c)(1)-(3) ....................................................................22

TEX. TAX CODE § 171.1012(c)(7) ..........................................................................22

TEX. TAX CODE § 171.1012(c)(10) ................................................................ 6, 21-22

TEX. TAX CODE § 171.1012(f) ......................................................................... 8, 20

TEX. TAX CODE § 171.1012(i) ..........................................................................*passim*

## Other Authorities

IAGC, *Current Member Certificates* (June 30, 2015) ...............................................13

HOUSE RESEARCH ORG.,
    Bill Analysis, Tex. H.B. 3, 79th Leg., 3d C.S. (2006) .......................................14-15

*TGS-NOPEC* (No. 08-1056) 2009 WL 899738,
    Amicus Curiae Br. of Int'l Ass'n of Geophysical Contractors in
    Supp. of Pet. for Review.....................................................................................13

No. 03-14-00713-CV

# In the Court of Appeals for the Third Judicial District Austin, Texas

GLENN HEGAR, COMPTROLLER OF PUBLIC ACCOUNTS OF THE STATE OF TEXAS, AND KEN PAXTON, ATTORNEY GENERAL OF THE STATE OF TEXAS,
*Appellants*,

v.

CGG VERITAS SERVICES (U.S.), INC.,
*Appellee.*

On Appeal from the
353rd Judicial District Court of Travis County, Texas

**APPELLANTS' REPLY BRIEF**

TO THE HONORABLE THIRD COURT OF APPEALS:

Because CGG does not produce goods, its only costs that could qualify for the cost-of-goods-sold (COGS) deduction are costs for labor or materials that CGG furnishes to a project for the construction, maintenance, or improvement of real property. But CGG has no eligible labor or materials costs because its only involvement in such projects is providing seismic information that helps CGG's clients decide where or whether to drill for oil. And CGG's efforts to shoehorn its costs into the "labor or materials" provision rest on a misinterpretation of Tax Code section 171.1012. The Court should reverse the judgment below.

## ARGUMENT

## I. CGG MISFRAMES THE INQUIRY.

### A. This Appeal Involves Statutory Construction, a Question of Law.

CGG suggests that the Comptroller's appeal is hampered by his acceptance of certain factual findings made below. *See* CGG Br. 19, 23-24. But this case is not about the "'credibility of the witnesses and weight to be given to their testimony.'" *Id.* at 24 (quoting *Combs v. Newpark Res., Inc.*, 422 S.W.3d 46, 49 (Tex. App.—Austin 2013, no pet.)). The Comptroller generally did not dispute CGG's factual description of its business at trial; accordingly, he has not challenged on appeal the findings embodying that description. Instead, what is at issue is the construction of section 171.1012 and its application to CGG's business. *See Titan Transp., LP v. Combs*, 433 S.W.3d 625, 632 (Tex. App.—Austin 2014, pet. denied) ("The principal areas of conflict concern[ ] the correct interpretation of the applicable statutory provisions and the proper characterization of Titan's business activities given the undisputed evidence.").

Issues of statutory construction and application present questions of law that are reviewed de novo. *Id.* at 636. The trial court's legal conclusions merit no deference, regardless how they are labeled. *See id.* Accordingly, CGG cannot derail this appeal by pointing to factual findings that are immaterial to the legal issues under a correct construction or application of the law. *See, e.g., id.* at 642 (declaring findings immaterial in light of Court's construction and application of franchise-tax statute).

## B. Section 171.1012 Determines Whether an Entity's Costs Qualify for the Cost of Goods Sold Deduction.

CGG argues that, as a "deemed owner," it may take any COGS deductions that are available to actual owners of goods. CGG Br. 30-31, 36-37. But section 171.1012 does not establish a "threshold inquiry" regarding taxpayer status. Specifically, it does not allow entities that furnish qualifying labor or materials under subsection (i) to deduct costs other than the cost of furnishing that labor or those materials.

### 1. CGG's "threshold inquiry" contradicts the statute.

CGG argues that "[t]he only question before this Court is the threshold issue of whether CGG *qualified* for the COGS deduction." CGG Br. 64; *see id.* at 28 (describing "[t]he threshold inquiry"). It calls the Comptroller's focus on the deductibility of *costs* "convoluted" and "inverted." *Id.* at 19, 28. CGG is wrong, and its "threshold" argument is simply a creative attempt to deduct ineligible costs.

The statute starts by defining "goods" as "real or tangible personal property sold in the ordinary course of business of a taxable entity." TEX. TAX CODE § 171.1012(a)(1). "Tangible personal property" is defined three ways—two of which are irrelevant here. *Id.* § 171.1012(a)(3)(A)(i)-(iii). "Tangible personal property" is further defined to exclude "intangible property" and "services." *Id.* § 171.1012(a)(3)(B).

Subsection (b) provides: "Subject to Section 171.1014, a taxable entity that elects to subtract cost of goods sold for the purpose of computing its taxable margin shall determine the amount of that cost of goods sold as provided by this section." *Id.*

3

§ 171.1012(b). Subsection (c) provides various categories of "direct costs of acquiring or producing the goods"; subsection (d) lists additional costs that are eligible for the COGS deduction; subsection (e) excludes certain cost categories; and subsection (f) allows the deduction of "indirect or administrative overhead costs . . . allocable to the acquisition or production of goods," up to "four percent of the taxable entity's total indirect or administrative overhead costs." *Id.* §§ 171.1012(c)-(f). All of these provisions address the COGS eligibility of particular cost categories; they do not establish a "threshold" eligibility test for entities.

2.      **Section 171.1012(i)'s "labor or materials" provision does not allow a deemed owner of labor or materials to take a COGS deduction for costs other than the costs of furnishing "that labor or materials."**

Subsection (i) is the focus of the parties' disagreement. Its first sentence states that "[a] taxable entity may make a subtraction under this section in relation to the cost of goods sold only if that entity owns the goods." *Id.* § 171.1012(i). CGG argues that subsection (i)'s ownership requirement "qualifies" certain entities to take COGS deductions under subsections (c), (d), and (f). CGG Br. 28, 30, 36. Not so.

Contrary to CGG's claim, the ownership requirement *limits* which entities can claim the COGS deductions authorized under subsections (c), (d), and (f). *See Newpark Res.*, 422 S.W.3d at 55 (stating that ownership requirement "operates as a broad limitation on which entities can claim the cost-of-goods-sold deduction, restricting it to

4

those that actually own the goods they sell"). Instead, the ownership requirement makes COGS deductions unavailable to entities that do not own the goods produced.

The third sentence of subsection (i) creates a narrow exception to the ownership requirement: "A taxable entity furnishing labor or materials to a project for the construction, improvement, remodeling, repair, or industrial maintenance . . . of real property is considered to be an owner of that labor or materials and may include the costs, as allowed by this section, in the computation of cost of goods sold." TEX. TAX CODE § 171.1012(i). CGG reads the "labor or materials" provision as treating a qualifying entity as a "'deemed owner' of *goods*." CGG Br. 28 (emphasis added). This counter-textual leap, which rewrites the core of the "labor or materials" provision, is the cornerstone of CGG's flawed argument.

Under the "labor or materials" provision's plain language, an entity furnishing labor or materials to a qualifying project "is considered to be an owner *of that labor or materials*," TEX. TAX CODE § 171.1012(i) (emphasis added). CGG cannot avoid the distinction simply by labeling itself a "deemed owner" and ignoring what it is that CGG is purportedly deemed to own.

CGG admits that its interpretation would allow a taxpayer to claim deductions for costs that it could not deduct under subsections (c), (d), or (f). For example, CGG concedes that it does not "qualif[y] for the COGS deduction on the basis of subsection (c)(10)," CGG Br. 36, the subsection that authorizes COGS deductions for "geological and geophysical costs incurred to identify and locate property that has the potential to

5

produce minerals," TEX. TAX CODE § 171.1012(c)(10). But CGG claims that, as a "deemed owner under subsection (i)," it is nonetheless "entitled to deduct all of its incurred costs as allowed by subsections (c), (d), and (f), including the costs specified under (c)(10)." CGG Br. 36-37. CGG's reading cannot be reconciled with the statute.

By authorizing a deemed owner of labor or materials to "include *the costs . . .* in the computation of cost of goods sold," the "labor or materials" provision allows a deduction only for the costs incurred in furnishing "that labor or materials." TEX. TAX CODE § 171.1012(i) (emphasis added). It does not allow a deemed owner of labor or materials to deduct costs unrelated to that labor or those materials. *See Newpark Res.*, 422 S.W.3d at 56 (stating that "section 171.1012(i) is designed to allow the party that furnishes labor for the improvement of real property to deduct *that cost* as if it sold the property") (emphasis added). Only by rewriting the statute can CGG argue that an entity that neither owns nor produces goods may nonetheless deduct all of its costs under subsections (c), (d), and (f).

### 3. *Newpark Resources* supports the Comptroller's construction.

In *Newpark*, the Court described the relevant inquiry as whether "those entities that furnish labor to the improvement of real property [may] deduct all expenses *related to their supply of labor* as a cost of goods sold." 422 S.W.3d at 55 (emphasis added); *see also id.* at 51 (stating issue presented as whether the taxpayer "'furnish[ed] labor or materials to a project for the construction . . . of real property' such that it can include the cost of that labor or material in its cost of goods sold") (quoting TEX. TAX CODE

6

§ 171.1012(i)). The Court agreed that subsection (i)'s purpose is to allow construction companies and contractors to deduct the costs of materials and labor they furnish to a construction project when their non-ownership of the real property would otherwise render those costs ineligible. *Id.* Accordingly, it "conclude[d] that when viewed in the context of section 171.1012, subsection (i) means that the party that supplies labor or materials to the construction, improvement, remodeling, repair, or industrial maintenance of real property can deduct *its labor or material expenses* as a cost of goods sold, assuming those expenses would qualify as the cost of selling real property." *Id.* at 55-56 (emphasis added).

Nothing in the opinion suggests that being deemed to own labor or materials lets an entity deduct costs other than the costs incurred in furnishing that labor or those materials. Instead, the Court's conclusion that a deemed owner of labor or materials "can deduct its labor or material expenses as a cost of goods sold" under subsection (i), *id.* at 56, implicitly recognizes that the "labor or materials" exception is limited to costs associated with furnishing that labor or those materials.

### 4. Estoppel is not a valid method of statutory construction.

CGG urges that the Comptroller is effectively estopped from arguing that the "labor or materials" provision allows a deemed owner to deduct only its qualifying labor or materials costs on the theory that, at trial, "[t]he Comptroller's auditor, Gary Dullum, agreed that 'as allowed by this section' means all of the costs under (c), (d), and (f)." CGG Br. 66 (citing 3.RR.72-73). CGG is wrong in two respects.

7

First, the record belies CGG's assertion. Mr. Dullum agreed "that subsections . . . (c) and (d) provide for the inclusion in cost of goods sold, the categories of costs that are stated under those subsections as direct costs." 3.RR.72:20-25; *see also* 3.RR.73:14-17. He further testified that section 171.1012(f) and Rule 3.588 govern the deductibility of indirect costs. 3.RR.73:1-13. But he did not testify that the phrase "as allowed by this section" authorizes a deemed owner of labor or materials to deduct costs other than for furnishing that labor or those materials.

Even if he had so testified, Mr. Dullum's opinion regarding the interpretation of section 171.1012 would be irrelevant because "[m]atters of statutory construction are questions of law for the court to decide." *Upjohn Co. v. Rylander*, 38 S.W.3d 600, 611 (Tex. App.—Austin 2000, pet. denied) (upholding exclusion of expert testimony regarding correct interpretation of franchise-tax provision); *see also Traxler v. Entergy Gulf States, Inc.*, 376 S.W.3d 742, 747 (Tex. 2012) ("Regardless of the expert testimony [regarding the meaning of statutory terms], the issue before us is one of statutory construction for the courts."). CGG's reliance on a 2009 letter written by a Comptroller employee, *see* CGG Br. 66, is similarly unavailing.

## C.    It Was CGG's Burden to Prove the Eligibility of Its Claimed Costs.

As discussed below, even if *some* of CGG's costs were deductible as qualifying labor or materials costs, that would not allow CGG to deduct *other* costs that do not qualify for a COGS deduction under subsections (c), (d), or (f). *See infra* Part III. Similarly, even if CGG could qualify as an actual owner of goods with respect to its

8

images licensed through its Multi-Client Data Library (MCDL), that would not let CGG deduct costs related to its proprietary seismic data, which is not a "good." *Compare* CGG Br. 31 (erroneously arguing that "qualify[ing] as an 'actual owner of goods' based on its MCDL business activity . . . provides an alternative basis for affirming the final judgment *in full*") (emphasis added), *with id.* at 60 n.14 ("CGG has never argued that it qualifies as an 'actual owner' of goods based on its proprietary sales."); *see also infra* Part II.

In an effort to avoid these problems (and deduct millions of dollars in ineligible costs), CGG argues that the Comptroller waived any argument that CGG failed to segregate its eligible costs from its ineligible costs. CGG Br. 63-64. CGG's waiver argument is both legally erroneous and factually flawed.

As the plaintiff in a tax-protest suit under section 112.052, CR.5, CGG had the burden to provide all of the documentation necessary to support its claim. *See* TEX. TAX CODE § 112.052(d) ("A taxpayer shall produce contemporaneous records and supporting documentation appropriate to the tax or fee for the transactions in question to substantiate and enable verification of a taxpayer's claim relating to the amount of the tax, penalty, or interest that has been assessed or collected or will be refunded, as required by Section 111.0041."); *id.* § 111.008(a) (authorizing Comptroller to "compute and determine the amount of tax to be paid from information contained in the report or from any other information available to the comptroller"); *Alon USA, LP v. State*, 222 S.W.3d 19, 34 (Tex. App.—Austin 2005, pet. denied) ("Where the tax cannot be

9

determined with reasonable mathematical certainty from the available records, and the taxing authority declares the tax due from all information available that it deems reasonable, the burden to show that the determination was unreasonable, excessive, or that it was reached capriciously or arbitrarily, shifts to the complainant."); *Bullock v. Foley Bros. Dry Goods Corp.*, 802 S.W.2d 835, 839 (Tex. App.—Austin 1991, writ denied) ("[T]he Comptroller's deficiency determination is prima facie correct, and the taxpayer must disprove it. And, without a requirement that a taxpayer disprove an audit by documentation, the regulatory scheme requiring taxpayers to keep books and records would be vitiated." (internal citation omitted)).

At no point did the Comptroller relieve CGG of its burden to document its claimed COGS deductions. At trial, the Comptroller's counsel complained, for example, that CGG "does not keep track of which of its costs are for acquiring raw data," CR.47, "does not keep track of which of its costs are for processing data into visual representations," CR.48, and "does not keep track of which costs of acquisition and production are for contract customers and which are for multi-client customers," *id.* CGG subsequently introduced two exhibits separating its proprietary seismic data from its Multi-Client Data Library (MCDL) costs, with the proprietary costs further separated into data-acquisition costs and data-processing costs. 4.RR.708-10 (Pls.' Exs. 48-49). Referencing the segregated costs shown in Exhibit 48, the Comptroller argued that seismic data provided to proprietary customers, which represented more than half of CGG's sales, could not be intended for mass distribution, even if CGG's MCDL

10

data arguably could be. 3.RR.149-50. CGG's argument that the Comptroller waived CGG's failure to segregate its ineligible costs from potentially eligible costs is meritless.

CGG is also wrong in claiming that, "[a]t trial, the Comptroller challenged only whether CGG qualified for the COGS deduction under Section 171.1012(i)." CGG Br. 15. CGG ignores the arguments that CGG's costs are not deductible under subsections (c), (d), or (f) because CGG sells services and intangible property, not goods, and fails the mass-distribution and substantially-unaltered requirements under section 171.1012(a)(3)(A)(ii). CR.58-60, 62-65. The Comptroller accepted CGG's cost calculations but contested the COGS eligibility of CGG's deductions. 2.RR.16:1-2.

## II. CGG'S SEISMIC-DATA COSTS ARE NOT ELIGIBLE FOR THE COGS DEDUCTION BECAUSE CGG PRODUCES NO "GOODS."

It is undisputed that CGG's seismic data is not real property, *see* TEX. TAX CODE § 171.1012(a)(1); personal property, *id.* § 171.1012(a)(3)(A)(i); or a computer program, *id.* § 171.1012(a)(3)(A)(iii). CGG's sole basis for claiming to sell "goods" is its argument that seismic data falls within the provision defining tangible personal property to include

> films, sound recordings, videotapes, live and prerecorded television and radio programs, books, and other similar property embodying words, ideas, concepts, images, or sound, without regard to the means or methods of distribution or the medium in which the property is embodied, for which, as costs are incurred in producing the property, it is intended or is reasonably likely that any medium in which the property is embodied will be mass-distributed by the creator or any one or more third parties in a form that is not substantially altered.

*Id.* § 171.1012(a)(3)(A)(ii).

11

This provision cannot support the trial court's judgment for several reasons. First, CGG does not produce goods; it provides a service in the form of data, which is intangible property. *See* Comptroller Br. 28-35. Second, CGG does not intend to mass-distribute its seismic data in any medium in which it is embodied, much less in a substantially unaltered form. *Id.* at 36-41. Moreover, CGG presses its "mass-distribution" argument solely with respect to MCDL costs, yet CGG's own evidence reveals that allowing a COGS deduction for those costs alone would not entitle CGG to a tax refund. *Id.* at 37. Finally, CGG Veritas's flawed interpretation of "similar property" ignores well-established principles of statutory interpretation. *Id.* at 39.

## A. CGG Provides a Service; It Does Not Sell Tangible Property.

Acknowledging how technology has altered society's consumption of goods, the Legislature expanded the definition of "tangible personal property" to include property such as films, books, and music that is essentially the same good regardless whether it is embodied in a digital or traditional medium, so that an entity would be able to deduct certain costs accrued in creating those goods regardless of the production medium. Thus, the "tangible personal property" definition encompasses property that ordinarily would not be considered "tangible." *See* CGG Br. 53 (discussing "artificial TPP"). But the Legislature limited the expansion to the items listed and "similar property," and it imposed requirements of mass-distribution and substantially-unaltered form. TEX. TAX CODE § 171.1012(a)(3)(A)(ii).

### 1.     CGG's seismic data is intangible property.

It is undisputed that CGG's seismic data is an intangible asset. *See TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 441 (Tex. 2011); CGG Br. 53.  CGG lists seismic data as intangible assets in its internal documents.  5.RR.187, 226.  And the International Association of Geophysical Contractors (of which CGG is a core member)[1] submitted an amicus brief characterizing seismic data as "a specific type of intangible property" in the *TGS-NOPEC* case.  *See* Amicus Curiae Br. of Int'l Ass'n of Geophysical Contractors in Supp. of Pet. for Review at 11, *TGS-NOPEC* (No. 08-1056), 2009 WL 899738, at *11.[2]  Because seismic data is an intangible asset that cannot fit within the narrow statutory expansion of "tangible personal property," it is not a "good" for COGS purposes.  *See* TEX. TAX CODE §§ 171.1012(a)(1), .1012(a)(3)(B).

### 2.     CGG uses its seismic data to provide its clients with seismic maps representing CGG's opinion regarding the underground topography.

CGG avoids characterizing its work as performing services in its brief, but its description of its business (including the company name) belie its efforts. *See, e.g.*, CGG Br. 1 ("CGG Veritas Services (U.S.), Inc."); CR.7 (explaining that CGG "perform[s] geophysical data acquisition services" for oil and gas producers); 5.RR.72 ("We are committed to providing clients with a full array of seismic data services, from

---

[1] *See* IAGC, *Member Company Certificates* (June 30, 2015), http://www.iagc.org/member-company-certificates.html (follow hyperlink to Members) (last visited Aug. 24, 2015).

[2] *Available at* http://www.search.txcourts.gov (search case # 08-1056, then follow hyperlink).

acquisition and processing to data interpretation and management."). CGG's lead witness at trial even described CGG's acquisition of seismic data as a service. 2.RR.104:9-13. CGG cannot include the costs of its services in a COGS deduction because the statutory definition of tangible personal property explicitly excludes "services." *See* TEX. TAX CODE § 171.1012(3)(B)(ii).

The legislative history further supports this conclusion. Franchise tax supporters contemplated that service providers would deduct employee compensation rather than COGS. *See* HOUSE RESEARCH ORG., Bill Analysis at 11, Tex. H.B. 3, 79th Leg., 3d C.S. (2006) ("While a manufacturing firm that produces goods for sale likely would choose to deduct the costs associated with producing those goods, a service-based business would be able to deduct its primary expense, which is employee wages."). Opponents likewise recognized that service providers could not take a COGS deduction for most expenses and would essentially "be left with no choice other than the compensation deduction." *Id.* at 14.[3]

Moreover, CGG is wrong to suggest that because its services of data acquisition and interpretation can be captured in "visual and sound recordings," the resulting seismic data falls within the narrow statutory expansion of tangible personal property.

---

[3] The service-sector business example provided was a law firm. Similar to how CGG sells the acquisition, processing, and interpretation of intangible seismic data services, law firms sell legal researching, writing, and interpretation services. While both seismic data or legal advice can be inscribed on paper or other tangible medium, the act of recording the intangible information and advice into tangible form does not transform the costs incurred in providing those services into costs incurred in producing "tangible personal property" that is eligible for a COGS deduction.

14

*See* CGG Br. 58. The statutory phrase "without regard to the means or methods of distribution or the medium in which the property is embodied" makes clear that the *mode* of distribution and embodiment is irrelevant. TEX. TAX CODE § 171.1012(a)(3)(A)(ii). Whether property falls within this provision hinges on its essence (and whether it is mass-distributed and substantially unaltered), not on its ability to be embodied in a visual image or sound recording. *Cf.* CGG Br. 4. The essence of seismic data is information, similar to an X-ray or MRI that a doctor interprets to inform a patient what is occurring under the skin.

The nature of seismic or medical information does not change simply because it is recorded or transcribed into a corporeal form. As with medical test results, CGG's seismic images have value only to the extent they reflect the professional opinion of CGG's geoscientists. *See* 2.RR.48:19-22 (noting that the same sound recording can lead to numerous different images, "because each of the different algorithms [applied during processing] . . . will give you a different image"). Accordingly, what oil companies are really buying are services reflecting CGG's professional opinion, which is expressed as a visual image or model. Because CGG sells services and intangible property, not goods (like films or books) that are sought for their aesthetic or narrative value, CGG's costs are not deductible for COGS purposes.

15

**B.** **CGG's Concessions Make It Unnecessary for the Court to Address the Parties' Arguments Regarding Section 171.1012(a)(3)(A)(ii).**

CGG's seismic data also fails to meet the mass-distribution requirement to fit within the statutory definition of "tangible personal property." To be considered 'tangible personal property" (regardless of whether the medium of distribution is actually tangible), for "costs are incurred in producing the property," it must be "intended or [] reasonably likely that any medium in which the property is embodied will be mass-distributed . . . ." TEX. TAX CODE § 171.1012(a)(3)(A)(ii). As previously discussed, none of CGG's seismic data are intended or reasonably likely to be mass-distributed in any medium. *See* Comptroller Br. 35-41. But CGG's concessions obviate the need for the Court to address this issue.

CGG argues only that its MCDL data satisfies the mass-distribution requirement. *See* CGG Br. 59-62. CGG does not press that argument with respect to its proprietary seismic data, *see id.* at 60 n.14, which is acquired and processed for an individual client's exclusive use—the antithesis of mass distribution. *See* Comptroller Br. 36-37. CGG's implicit concession that its proprietary data fails the mass-distribution prong is crucial because, if CGG's proprietary-data costs are ineligible for the COGS deduction, CGG is not entitled to *any* tax refund. *See* 4.RR.710 (Pls.' Ex. 49, Scenario 2).[4] Even if CGG could meet the mass-distribution prong with respect to its MCDL costs, that would

---

[4] If only the MCDL data satisfy the mass-distribution requirement, the 30% franchise-tax deduction would be more favorable to CGG than the COGS deduction. 4.RR.710 (Pls.' Ex. 49) (Scenario 3).

help CGG only if it could also establish mass distribution with respect to its proprietary data costs—an argument that CGG understandably declines to advance. *See, e.g.*, CGG Br. 50 ("*Through its MCDL*, CGG sells goods in the ordinary course of business." (emphasis added)).

For the same reason, the Court need not decide whether CGG substantially alters the raw seismic data by transforming it into useful visual images, *see* Comptroller Br. 40-41, or whether raw seismic data is similar to films, sound recordings, videotapes, television and radio programs, and books, all of which—unlike CGG's raw seismic data—have narrative, aesthetic, or artistic value. *See id.* at 39-40. Unless CGG has at least $87,493,071 in non-MCDL costs that are eligible for a COGS deduction under subsection (i)'s "labor or materials" provision or some other provision of section 171.1012, CGG's concessions that it (1) cannot satisfy the mass-distribution prong with respect to its proprietary data and (2) is not entitled to a tax refund if it can deduct only its MCDL costs means that the final judgment awarding CGG a COGS deduction of $567,600,223 cannot be sustained under section 171.1012(a)(3)(A)(ii). *See infra* Part III.

## III. CGG IS NOT A DEEMED OWNER OF GOODS UNDER SECTION 171.1012(i) AND CANNOT QUALIFY FOR THAT SECTION'S NARROW "LABOR OR MATERIALS" EXCEPTION.

Acquiring raw seismic data and transforming it into useful visual images undoubtedly require significant effort, technology, and expertise—and, accordingly, significant costs. *See* CGG Br. 1-5. But CGG's efforts to shoehorn its costs into the narrow "labor or materials" exception fail for two principal reasons.

First, when CGG provides its clients with sophisticated seismic images that help those companies decide where or whether to drill, it is providing a professional service, not furnishing labor or materials. Although "labor" and "services" are not mutually exclusive terms, classifying CGG's highly-specialized professional services as mere "labor" would obliterate any meaningful difference between those terms.

Second, any labor or materials provided by CGG are not furnished "to a project for the construction, improvement, remodeling, repair, or industrial maintenance" of real property. Here, the construction or improvement projects are oil and gas wells that may (or may not) eventually be drilled. Those drilling decisions may be based on CGG's opinion about where hydrocarbons are likely to be found, but CGG has no involvement in the actual construction of the well. At most, CGG's efforts are furnished in anticipation of construction projects that may later arise.

### A. CGG's Provision of Sophisticated Data-Processing Services Is Not "Furnishing Labor or Materials."

#### 1. CGG is not furnishing "labor."

CGG's acquisition and transformation of seismic data constitutes a service. *See supra* Part II.A. In *Newpark*, this Court recognized that the definitions of "labor" and "services," while overlapping to some extent, "encompass different concepts." 422 S.W.3d at 54. Simply because a service involves some expenditure of effort does not mean that every cost involved in providing that service can be deducted under the "labor or materials" provision.

When a professional provides a service, the value to the client lies in the professional's expertise, which is acquired through years of specialized study that go far beyond the training that even a skilled laborer typically undergoes. Processing seismic data requires a "complex . . . software and hardware system" staffed by "a lot of highly trained and experienced people." 2.RR.90:9-11. CGG's data-processing center in Houston is staffed by approximately 200 geoscientists, over 75% of whom hold doctorates or other advanced degrees. 2.RR.90:13-19. "Generating seismic images is 'a lot of science and somewhat of an art.'" CGG Br. 4 (quoting 2.RR.141:15-16). CGG cannot simply "dump [the raw data] in and turn a crank." 2.RR.90:21-22.

By contrast, when labor is furnished for a construction project, such as framing, roofing, or waste-removal work, the effort is the dominant component. 422 S.W.3d at 56-57 (concluding that hauling and disposing of drilling mud and waste materials from drilling site is "labor" that falls within the "labor or materials" provision). Nor do waste disposal and other construction-related labor require advanced scientific degrees. CGG's conclusory argument that "CGG's activity qualifies as labor just as [Newpark's] did," CGG Br. 41, is unpersuasive.

The Court recognized in *Newpark* that the "labor or materials" exception was intended to allow construction companies and contractors to deduct their material and labor costs that otherwise would be ineligible because the finished project is owned by others. 422 S.W.3d at 55 ("Given that real property itself is a 'good' within the meaning of section 171.1012, but that many of the businesses that incur costs to improve or

19

maintain real property never sell that good, the legislature could have reasonably intended section 171.1012(i) to allow those same companies to deduct their costs as if they were a cost of goods sold."). But CGG does not furnish labor or materials to construction projects in the way that builders and subcontractors do.

If CGG's costs qualify as "labor" costs, it is hard to imagine any service-related costs that would not. The services provided by lawyers, doctors, architects, engineers, and countless other professionals all involve some expenditure of mental or physical effort. *See id.* at 54 n.8 (suggesting that labor involves "an additional expenditure of either physical or mental effort" beyond that required to perform services). One would not expect that the cost of legal services provided in connection with the acquisition of a mineral lease could be deducted as "labor or materials" furnished to the construction of a well on that lease. Yet CGG's position embraces that absurd result.

CGG observes that the costs of legal, accounting, security, and other services are deductible as indirect or administrative overhead costs under subsection (f). *See* CGG Br. 40. But that hardly "show[s] the Legislature's intent that aspects of 'service' can be provided as part of 'furnishing labor or materials.'" *Id.* Whereas *all* of a taxpayer's qualifying labor or materials costs are eligible for a COGS deduction under subsections (c) or (i), only 4% of the taxpayer's total indirect or administrative overhead costs may be deducted under subsection (f). TEX. TAX CODE § 171.1012(f). Subsection (f)'s drastic limitation on the amount of service-related costs that are deductible, together

20

with the exclusion of services from the TPP definition, confirms that the Legislature did not intend to allow large COGS deductions for service-related costs.

CGG argues that the Comptroller's distinction between professional services and labor is "the same argument" as the "physical change" requirement that the Comptroller abandoned last year after the *Titan Transportation* decision. CGG Br. 42-43. That argument is meritless. The Comptroller is not arguing that CGG's costs are ineligible *per se* in the absence of physical changes; his appellant's brief does not even address the subject. CGG is attacking a straw man.

### 2. The cost of CGG's seismic services can be deducted by drilling companies but not CGG.

The Court need not decide the precise parameters of the definitions of "labor" and "services" in order to recognize that CGG's costs are not "labor or materials" costs. As previously discussed, the separate statutory category allowing a COGS deduction for "geological and geophysical costs incurred to identify and locate property that has the potential to produce minerals," TEX. TAX CODE § 171.1012(c)(10), indicates that the Legislature did not consider geological mapping services to constitute "labor" or "materials," categories that are covered in their own statutory subsections, *id.* § 171.1012(c)(1)-(3). *See* Comptroller Br. 45-47. CGG's position that its seismic-data costs are all deductible under the "labor or materials" provision, *see* CGG Br. 31-36, renders subsection (c)(10) mere surplusage. *See Leordeanu v. Am. Protection Ins. Co.*, 330

21

S.W.3d 239, 248 n.35 (Tex. 2010) ("We construe statutes to give effect to every provision and ensure that no provision is rendered meaningless or superfluous.").

CGG points to "intangible drilling and dry hole costs," which are allowed under section 171.1012(c)(7), arguing that those costs overlap with "geological and geophysical costs incurred to identify and locate property that has the potential to produce minerals," which are deductible under section 171.1012(c)(10). *See* CGG Br. 39. But just because a drilling company is likely to incur costs in both categories does not mean that either category subsumes the other. The former provision authorizes COGS deductions for "the cost of renting or leasing equipment, facilities, or real property directly used for the production of the goods." TEX. TAX CODE § 171.1012(c)(7). Drilling companies can deduct the costs of purchasing mineral leases and renting drilling equipment under that provision because those companies produce goods—oil and gas. They can deduct the cost of seismic services (like CGG's) under subsection (c)(10) for the same reason. But the Legislature did not intend for CGG (and other companies that produce no goods) to claim COGS deductions for the cost of providing those services.

**B.     CGG's Seismic Data Is Not Furnished to a Construction Project.**

CGG's reliance on the "labor or materials" provision separately fails because CGG's services are "too far removed from the construction, improvement, remodeling, repair, or industrial maintenance of real property to qualify for the [COGS] deduction under section 171.1012(i)." *Newpark*, 422 S.W.3d at 57. Although an oil and gas well

constitutes a real-property construction "project," that project is merely a potential project until construction of the well actually begins. That may happen months or years after CGG provides the client with seismic data (or never, if the client decides to drill elsewhere). In every instance, no construction project actually exists when CGG furnishes whatever "labor" or "materials" are reflected in its seismic data—which undercuts CGG's argument that it furnishes labor or materials "to" a construction, improvement, or maintenance project. CGG's attempts to circumvent this problem are unavailing.

First, CGG reads "furnishing . . . to a project" to require only that the labor or materials be "sufficiently connected to a real-property improvement project." CGG Br. 31; *see also id.* at 45. But the Legislature's purpose in using the "to a project" language was to constrain the "labor or materials" exception to labor or materials directly used in projects to build, improve, or maintain real property. If the Legislature had intended only the modest nexus that CGG urges, it would have used language such as "in connection with a project," as it did in a neighboring provision governing calculation of a taxpayer's total revenue for franchise-tax purposes. *See* TEX. TAX CODE § 171.1011(g)(3) (allowing taxpayer to exclude from total revenue payments for labor or materials "in connection with the actual or proposed design, construction, remodeling, remediation, or repair of improvements on real property"); *Titan Transp.*, 433 S.W.3d at 637-38 (stating that "'[i]n connection with' is a phrase of intentional breadth" that "can only be read as requiring some reasonable nexus between the

23

services, labor, and materials for which the taxpayer pays a subcontractor and 'the actual or proposed design, construction, remodeling, or repair of improvements on real property or the location of boundaries of real property'") (quoting TEX. TAX CODE § 171.1011(g)(3)).

Similarly, if the Legislature had wanted to authorize deductions for labor or materials furnished in connection with *potential* projects, it would have used language like the "actual or proposed" language used in section 171.1011(g)(3). Instead, the Legislature required that the labor or materials be furnished "to a project." TEX. TAX CODE § 171.1012(i). CGG's argument that requiring labor or materials to be furnished to existing projects "reads words into the statute," CGG Br. 47, ignores that the "labor or materials" provision omits section 171.1011(g)(3)'s "actual or proposed" language.

CGG also tries to circumvent the "to a project" language by subtly replacing the statutory meaning of "project"—referring to, in this case, an oil and gas well—with the broader sense of "project" that describes the exploration ventures undertaken by CGG's clients. *See* CGG Br. 48 (describing situations in which "the [proprietary] customer is far enough into *the project* to specify the parameters of work for CGG") (emphasis added); *id.* at 49 ("Determining where to drill and not to drill are equally essential components of *the project*") (emphasis added); *see also id.* at 1 ("CGG Produces and Sells Seismic Data for Use in Oil & Gas Projects."); *id.* at 5 ("Seismic Data is Essential to Drilling Projects."); *id.* at 6 ("CGG's work is 'important to the entire drilling project.'" (quoting 2.RR.130:20-21)). Simply because CGG's services are useful to oil

24

and gas ventures does not mean that CGG furnishes labor or materials to a project for the construction or maintenance of an oil well.

### C. CGG Cannot Legitimately Claim That All of Its Costs Are for "Labor or Materials."

CGG argues that if *any* of its costs qualify under the "labor or materials" provision, then *all* of them do. CGG Br. 63-67. In CGG's view, spending one dollar on qualifying labor or materials would allow it to deduct millions of dollars in costs that are not labor or materials costs and are otherwise ineligible under section 171.1012. *See id.* Neither Texas law nor common sense supports CGG's position. As discussed above, subsection (i)'s "labor or materials" provision authorizes COGS deductions only for costs of furnishing labor or materials. *See supra* Part I.B. And it was CGG's burden to document and prove all of its claimed deductions, not the Comptroller's burden to disprove them. *See supra* Part I.C.

## PRAYER

The Court should reverse the judgment below and render judgment for the Comptroller or remand for further proceedings.

Respectfully submitted.

KEN PAXTON
Attorney General of Texas

CHARLES E. ROY
First Assistant Attorney General

SCOTT A. KELLER
Solicitor General

/s/ Joseph D. Hughes
JOSEPH D. HUGHES
Assistant Solicitor General
State Bar No. 24007410

AUTUMN HAMIT PATTERSON
Assistant Attorney General
State Bar No. 24092947

OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1729
Fax: (512) 474-2697
*jody.hughes@texasattorneygeneral.gov*

COUNSEL FOR APPELLANTS

26

## CERTIFICATE OF SERVICE

I hereby certify that on August 25, 2015, a true and correct copy of the foregoing brief was served via File & ServeXpress to the following counsel of record:

Amanda Taylor
James F. Martens
Lacy Leonard
MARTENS TODD LEONARD & TAYLOR
301 Congress Ave., Suite 1950
Austin, Texas 78701
Tel.: (512) 542-9898
Fax: (512) 542-9899
*ataylor@textaxlaw.com*
*jmartens@textaxlaw.com*
*lleonard@textaxlaw.com*

/s/ Joseph D. Hughes
Joseph D. Hughes


## CERTIFICATE OF COMPLIANCE

In compliance with Texas Rule of Appellate Procedure 9.4(i)(2), this brief contains 6,235 words, excluding the portions of the brief exempted by Rule 9.4(i)(1).

/s/ Joseph D. Hughes
Joseph D. Hughes