In The
*Court of Appeals*
*Ninth District of Texas at Beaumont*
NO. 09-24-00203-CV

**IN RE FIRST RESERVE MANAGEMENT, L.P., FIRST RESERVE CORPORATION, L.L.C., FR XII ALPHA AIV, L.P., FR XII-A ALPHA AIV, L.P., FR SAWGRASS, L.P., SK SAWGRASS, LP, SK CAPITAL PARTNERS, LP, SAWGRASS HOLDINGS, L.P., AND SAWGRASS HOLDINGS GP LLC**

**Original Proceeding**
**128th District Court of Orange County, Texas**
**Trial Cause No. A2020-0236-MDL**

**MEMORANDUM OPINION**

In a petition for a writ of mandamus, Relators First Reserve Management, L.P., First Reserve Corporation, L.L.C., FR XII Alpha AIV, L.P., FR XII-A Alpha AIV, L.P., FR Sawgrass, L.P., SK Sawgrass, LP, SK Capital Partners, LP, Sawgrass Holdings, L.P., and Sawgrass Holdings GP LLC, seek to compel the trial court to vacate its March 28, 2024, Order on Joint Motion for Rehearing under Rule 91a and

Joint Rule 91a Motion to Dismiss of Defendants First Reserve, SK Capital, and Sawgrass GP, and grant Relators' Rule 91a motions to dismiss. We conditionally grant mandamus relief.

## Background

The multi-district litigation consolidated in Trial Cause Number A2020-0236-MDL concerns personal injury and property damage claims that arose from explosions at the TPC petrochemical processing plant in Port Neches, Texas on Thanksgiving Eve 2019. The history of this litigation is described in opinions issued by the Supreme Court of Texas, by a bankruptcy court, and by this Court. *See In re First Reserve Mgmt., L.P.*, 671 S.W.3d 653 (Tex. 2023) (orig. proceeding); *see also In re TPC Grp. Inc.*, No. 22-10493 (CTG), 2023 WL 2168045 (Bankr. D. Del. Feb. 22, 2023); *see also In re First Reserve Mgmt., L.P.*, 665 S.W.3d 44 (Tex. App.—Beaumont 2022, orig. proceeding). Additionally, we described Relators' corporate structures and ownership interests in TPC in a previous accelerated appeal from orders denying special appearances. *See TPC Grp. Litigation*, No. 09-22-00159-CV, 2024 WL 3197475, at *1 (Tex. App.—Beaumont June 27, 2024, no pet.) (mem. op.). In these proceedings the courts reviewed pleadings that have been superseded by the Plaintiffs' Eighth Amended Original Petition, which the Real Parties in Interest filed in response to concerns that the courts' opinions addressed but not did not resolve entirely.

In its opinion in *First Reserve,* the Supreme Court addressed whether the negligent undertaking and other direct claims alleged in the plaintiffs' Third Amended Petition were sufficient to withstand the Rule 91a motion to dismiss. *See* 671 S.W.3d at 657-58. While the mandamus proceeding was pending in the Supreme Court of Texas, the bankruptcy court enjoined the plaintiffs from prosecuting the plaintiffs' veil-piercing and alter ego claims because those claims belonged to the estate and were released under the plan. *Id.* at 658 (citing *TCP Grp. Inc.,* 2023 WL 2168045, at *2). In April 2023 the bankruptcy court approved a proposed Seventh Amended Petition. *Id.* at 659. Due to the bankruptcy court's injunction, the Supreme Court declined to consider the relators' arguments regarding the alter ego, veil piercing claims that had been alleged in the Third Amended Petition, but it did consider whether the plaintiffs' allegations of negligent undertaking and other direct claims in the Third Amended Petition were sufficient to withstand the Rule 91a motion to dismiss. *Id.* Noting that neither an omission nor a promise to render a service that is not accompanied by either performance or reliance on the promise by the injured party can implicate liability for negligent undertaking, the Supreme Court concluded that the MDL court should have granted First Reserve's motion to dismiss because the plaintiffs' Third Amended Petition made no factual allegations to show a cause of action with a basis in law against First Reserve for TPC's conduct. *Id.* at 660-63. The Supreme Court declined to grant mandamus relief, however, because

3

the Court could not determine what disruption a directive would have had on proceedings that had been stayed due to the bankruptcy and that might resume under a different petition. *Id*. at 663.

The parties returned to the MDL court. On December 19, 2023, the Real Parties in Interest filed their Eighth Amended Petition, adding SK Capital Partners, LP as a defendant.[1] On February 12, 2024, Relators filed a joint motion for rehearing of the Rule 91a motion and asked the MDL court to dismiss all claims against them in the Eighth Amended Petition. In a response filed on February 27, 2024, the Real Parties argued Relators' motion was untimely as to all parties except SK Capital Partners, LP and that the MDL court should deny a request to rehear a motion to dismiss that had already been denied, a ruling with respect to which the Supreme Court denied mandamus relief, albeit based on the pleadings of a previous petition. In a reply filed on March 4, 2024, Relators argued the MDL court had jurisdiction to grant a Rule 91a motion after the rule's procedural deadlines expired, the legal rulings in the Supreme Court's *First Reserve* opinion applied, and the Eighth Amended Petition failed to cure the defects identified in the opinion. The MDL court heard the motion on March 5, 2024, and signed an order denying the motion on

---

[1]The petition stated SK Capital Partners, LP had been "sued and misidentified" as SK Second Reserve, LP f/k/a SK Capital Partners, LP.

March 28, 2024. On June 5, 2024, Relators filed their joint petition for a writ of mandamus.

On June 27, 2024, our judgment in *TPC Group Litigation* reversed the MDL court's orders denying special appearances and dismissed the claims against First Reserve Management, L.P., First Reserve Corporation, L.L.C., FR XII Alpha AIV, L.P., FR XII-A Alpha AIV, L.P., FR Sawgrass LP, SK Second Reserve, L.P. f/k/a SK Capital Partners, LP, and SK Sawgrass, L.P. in Trial Cause Number A2020-0236-MDL. 2024 WL 3197475, at *1, 17. The mandate issued on September 5, 2024. According to Relators and Real Parties in Interest, the relators who were not appellants in Appeal Number 09-22-00159-CV include SK Capital Partners, LP, Sawgrass Holdings, L.P., and Sawgrass Holdings GP LLC.

Mandamus Standard

Mandamus may issue to correct a clear abuse of discretion when there is no other adequate remedy by law. *In re Essex Ins. Co.*, 450 S.W.3d 524, 526 (Tex. 2014) (orig. proceeding). A trial court abuses its discretion when its ruling amounts to a clear and prejudicial error of law, or if the trial court fails to correctly analyze or apply the law to the facts. *In re H.E.B. Grocery Co., L.P.*, 492 S.W.3d 300, 302-03 (Tex. 2016) (orig. proceeding). "The relator must establish that the trial court could have reasonably reached only one conclusion." *Id*. at 303. "Mandamus relief is appropriate when the trial court abuses its discretion in denying a Rule 91a motion

5

to dismiss." *In re Farmers Tex. Cnty. Mut. Ins. Co.*, 621 S.W.3d 261, 266 (Tex. 2021) (orig. proceeding).

Laches

The Real Parties argue laches should operate to bar mandamus relief. In particular, the Real Parties argue SK Sawgrass, L.P. and Sawgrass Holdings GP LLC slept on their rights because they filed Rule 91a motions to dismiss in 2021 but failed to join the *First Reserve* mandamus petition and waited until 2024 to request a rehearing from the MDL court and mandamus relief from an appellate court.

For purposes of determining whether a relator unreasonably delayed seeking mandamus relief, the Supreme Court has measured the time from the date the trial court denied the motion for reconsideration to the date the relator filed a mandamus petition in the appellate court and has found that a two-month delay is not necessarily unreasonable. *In re Laibe Corp.*, 307 S.W.3d 314, 318 (Tex. 2010) (orig. proceeding). Due to the TPC Bankruptcy, proceedings were stayed in the MDL court until December 2023. The Real Parties filed their Eighth Amended Petition that month. Approximately two months later, Relators filed a joint motion asking the trial court to reconsider its earlier ruling in light of *First Reserve* and the Real Parties' failure in their Eighth Amended Petition to allege facts supporting their negligent undertaking claims against any of the Relators. Relators filed their mandamus

petition approximately two months after the trial court denied the motion. Under the circumstances, we conclude there was no unreasonable delay.

Law of the Case

The Real Parties argue that the law of the case doctrine precludes the relief requested by Relators because Relators failed to seek rehearing from the Supreme Court after it denied mandamus relief on a since abandoned petition. They concede the failure to grant a petition for a writ of mandamus usually is not an adjudication of the merits. *In re AIU Ins. Co.*, 148 S.W.3d 109, 119 (Tex. 2004) (orig. proceeding). They argue, however, that in *First Reserve* the Supreme Court did reach the merits and still denied relief, such that a lower court cannot now grant the relief the higher court denied. We must consider, however, that the Supreme Court's ruling on the merits was that the MDL court should have granted the Rule 91a motion to dismiss the Real Parties' claims based on their Third Amended Petition. *See First Reserve*, 671 S.W.3d at 663. The Supreme Court denied mandamus relief because the bankruptcy court required the Real Parties to replead when litigation resumed in state court and if the case proceeded it would be under a different petition that had not yet been filed in state court. *See id.* Considering that the Supreme Court stated that it denied relief because the case would proceed under a different petition and not because the Real Parties satisfied the notice-pleading rules, we conclude the

7

Supreme Court's opinion and judgment in *First Reserve* does not bar subsequent mandamus relief.

Rehearing under Rule 91a

The Real Parties argue mandamus relief should be denied because Rule 91a contains no provisions for rehearing or reconsideration of the initial order denying the motion to dismiss. Generally, the trial court retains continuing control over interlocutory orders and has the power to set those orders aside any time before a final judgment is entered. *Fruehauf Corp. v. Carrillo*, 848 S.W.3d 83, 84 (Tex. 1993). The MDL court's order denying the Rule 91a motion to dismiss was an interlocutory order and no provision within Rule 91a expressly prohibits a trial court from reconsidering its ruling on an interlocutory order on a motion to dismiss. *See* Tex. R. Civ. P. 91a. We conclude the MDL court had the authority to consider Relators' motion for rehearing.

Rule 91a

Under Rule 91a, "a party may move to dismiss a cause of action on the grounds that it has no basis in law or fact." Tex. R. Civ. P. 91a.1. "A cause of action has no basis in law if the allegations, taken as true, together with inferences reasonably drawn from them, do not entitle the claimant to the relief sought." *Id*. "A cause of action has no basis in fact if no reasonable person could believe the facts pleaded." *Id*. Whether a party is entitled to a dismissal on the pleadings is a legal

8

question that we review de novo. *Farmers Tex. Cnty. Mut. Ins. Co.*, 621 S.W.3d at 266.

SK Capital Partners, L.P.

First, we consider whether the trial court abused its discretion by denying the motion to dismiss filed by the party brought into the suit in the Eighth Amended Petition, SK Capital Partners, LP. In their Eighth Amended Petition, the Real Parties grouped SK Capital Partners, LP, with the defendants the petition referred to as "TPC's Owners."[2] Additionally, when referring to "SK Capital" in the Eighth Amended Petition, the Real Parties refer not only to SK Capital Partners, LP, but also to SK Sawgrass, LP, Sawgrass Holdings, LP, and Sawgrass Merger Sub Inc., without differentiating between separate corporate entities.

1. Factual Allegations in the Eighth Amended Petition

Throughout the Eighth Amended Petition, the Real Parties consistently refer to Owners or Defendants without describing acts taken by any one defendant. For instance, they allege: (1) "TPC's Owners and Sawgrass Holdings GP LLC not only failed to prevent the two explosions at its Port Neches plant, it failed to control the fires and failed to control the continued release of dangerous chemicals and

---

[2]The other "Owners" include: First Reserve Corporation, LLC; FR Sawgrass, LP; First Reserve Management, LP; SK Sawgrass, LP; Sawgrass Merger Sub Inc.; Sawgrass Holdings, L.P.; FR XII Alpha AIV, LP; and FR XII-A Alpha AIV, LP. The appellation "Owners" is misleading, as the alleged owner of TPC Holdings, Inc. was Sawgrass Holdings, LP.

9

substances including, but not limited to, 1,3-butadiene[;]" (2) "Not only did TPC fail to develop written operating procedures to help protect from plugging and clogging due to polymer (including popcorn polymer), TPC's Owners and Sawgrass Holdings GP LLC failed to train employees on the 'free-up procedure' for key equipment leading to the two Explosions[;]" (3) "TPC's Owners and Sawgrass Holdings GP LLC —for the very towers that initially exploded and set off a devastating chain reaction of explosions, fires, chemical releases, and contamination—decided not to inspect or test them[;]" (4) quoting a OSHA citation to TPC, "Perhaps most emblematic of TPC's Owners and Sawgrass Holdings GP LLC's overall decision-making process, however, was its repeated failure to 'ensure that the management of change addressed the impact of the change on safety and health[;]'" (5) "TPC's Owners and Sawgrass Holdings GP LLC apparently decided not to activate the alarm for its uncontrolled butadiene release[;]" (6) again quoting a OSHA citation to TPC, "TPC's Owners and Sawgrass Holdings GP LLC, according to OSHA, willfully failed to provide employees with the conditions for which emergency shutdown of key equipment is required[;]" (7) citing yet another OSHA citation to TPC, "TPC's Owners and Sawgrass Holdings GP LLC 'willful' failure to correct equipment deficiencies operating outside acceptable limits—and exposing that equipment operating outside limits to fire and explosion hazards[;]" (8) "Owners, including, but not limited to, Sawgrass Holdings LP and Sawgrass Holdings GP LLC exercised

direct, daily operational control, management, and direction over TPC by assigning their agents to the Board of Managers of Sawgrass Holdings GP LLC (the 'Board'). These board member agents were contractually bound to operate solely in SK Capital's and First Reserve's interest and were prohibited from owing any duty to TPC, including the Port Neches facility[;]" (9) "the Owner Defendants, including, but not limited to, Sawgrass Holdings LP and Sawgrass Holdings GP LLC, knew or should have known the Port Neches TPC plant had a dangerous popcorn polymer infection that could only be corrected by shutting down the affected areas so a 'passivation' process could be implemented as part of a 'turnaround[;]'" (10) "Additional facts from the Board meeting minutes and presentations show the Owner Defendants' agents prioritized profits over risk reduction and prohibited the Port Neches TPC facility from conducting a planned turn-around designed to address the popcorn polymer problem because the Board wanted to 'enhance shareholder value' since it was planning the Owner Defendants' 'exit' from the TPC investment[;]" (11) "TPC Owners' and Sawgrass Holdings GP LLC's improper dictation of TPC's PNO facility operating and spending decisions, i.e., whether TPC may, as necessary, shut down production units, forego production, and spend monies on necessary turnarounds, which here would have altogether avoided the reasonably foreseeable explosions resulting from a never ameliorated infection of popcorn polymerization at TPC's Port Neches plant[;]" (12) Owners and Sawgrass Holdings

11

LP, by and through their agents who operated TPC knew or should have known that the dangerous popcorn polymer within TPC's Port Neches plant could only be cured with a passivator process, which can only take place during a turnaround[;]" (13) Owners, including but not limited to Sawgrass Holdings, LP and Sawgrass Holdings GP LLC, by direct contractual right of control and assuming turnaround governance of the TPC Port Neches plant, a task that is beyond a normal parent-subsidiary relationship, undertook direct daily operational control and governing authority over necessary safety repairs at the TPC Port Neches facility by inappropriately exercising its turnaround approval (which said Defendants had the ultimate authority to do), as well as other key safety and operational decisions[;]" (14) "Owners, including but not limited to Sawgrass Holdings LP and Sawgrass Holdings GP LLC, interfered with a planned safety turnaround, prohibited the plant from maintenance spending and instructed them to focus on cash flow and increased production, all while increasing the Plaintiffs' risk of harm. TPC's Port Neches plant made requests for necessary maintenance and capital improvements including, inter alia, a turnaround to eradicate the popcorn polymer problem and an operable fire water supply valve, which were prohibited from occurring by Owners, including but not limited to Sawgrass Holdings LP and Sawgrass Holdings GP LLC[;]" (15) "The Owner Defendants, including, but not limited to, Sawgrass Holdings LP and Sawgrass Holdings GP LLC knew or should have known of the extreme risks posed

12

by the popcorn polymerization issues and the corresponding risk of a catastrophic explosion. For instance, in the months leading up to the November 27, 2019, explosions, there were turnarounds scheduled or planned for September, October and early November of 2019 to address the popcorn polymer issue that was increasing and worsening daily. And yet, the Board repeatedly interfered with the operations of the Port Neches TPC facility and directed the turnarounds to be delayed in favor of cash flow, increased production, and potential increased profits upon its sale[;]" and (16) "The Owner Defendants' and Sawgrass Holdings GP LLC's above-described wrongful affirmative acts in operating and managing the Port Neches TPC facility, acting by and through their contractual owner control as set forth in The Company Agreement, were a producing and/or proximate cause of the two explosions in the Port Neches TPC facility[.]"

The allegations that specifically mention acts by SK Capital Partners, LP or "SK Capital" include: (1) "SK Capital Partners, LP ('SK Capital'), in partnership with First Reserve Corporation ('First Reserve'), in concert with the other Owner Defendants and Sawgrass Holdings GP LLC, which were created for this sole purpose, took TPC Group private in December 2012;" and (2) citing Board meeting presentations and minutes, in about December 2017, "First Reserve and SK Capital" learned through its agents that the Port Neches TPC facility maintained a 'run-to-failure' approach, had significant operational upsets and issues, suffered mechanical

13

integrity issues, and was experiencing a popcorn polymer problem that caused fouling and bottlenecking in the butadiene manufacturing process—conditions known to pose significant risks of explosion."

In the Eighth Amended Petition, the Real Parties do not allege that OSHA cited or fined SK Capital Partners, LP, nor do they allege that SK Capital Partners, LP contracted with TPC to provide operational services, nor that SK Capital Partners, LP was responsible for the acts and omissions of the three contractor defendants, one which the Eighth Amended Petition alleges "undertook the responsibility to advise TPC of the best ways to reduce fouling and prevent polymerization" and was negligent in its work for TPC "by failing to add the proper chemicals and the proper amounts of chemicals for the safe processing of butadiene[,]" another that was negligent "in failing to call for an Escalation Notice at TPC when they knew or should have known that the situation at TPC was a ticking time bomb[,]" and a third that "continued to negligently provide (and not provide) TPC for engineering services and non-engineering services it knew, or should have known, were not effective[,]" and "failed to timely and properly communicate its observations and recommendations as required by its contract with TPC." Instead, the Real Parties allege that "SK Capital" "exercised direct, daily operational control, management, and direction over TPC" by assigning two of the five directors to the Board of Managers of Sawgrass Holdings GP LLC "[t]hat operated TPC and

14

conducted its daily business affairs." They allege the Sawgrass Holdings GP LLC Company Agreement bound the board members appointed by SK Capital to act on SK Capital's behalf and have no duty to the Board of Managers, which they allege "created an irreconcilable conflict of interest" between SK Capital and TPC. The "direct-control powers" the Real Parties allege SK Capital exercised include "approving repairs and maintenance, requiring a sale of some or all the facility's assets, dictating when capital could be issued, controlling debt obligations, and ordering a Texas-based company to file for bankruptcy."

2. Causes of Action

The Real Parties allege SK Capital Partners LP is liable for negligence per se because "permit holders—such as TPC's Owners and Sawgrass Holdings GP LLC—must submit the compliance certification to the executive director of the TCEQ within thirty (30) days of any certification period. The TPC plant's permit compliance certification for the January 1, 2017 through December 31, 2017 certification period was due by January 30, 2018 but was not submitted until July 23, 2018. As such, TPC's Owners and Sawgrass Holdings GP LLC violated the law by failing to submit a permit compliance certification within thirty days after the end of the certification period in violation of the law." They do not identify a permit issued to SK Capital Partners, LP that requires a person in his capacity as an officer of SK Capital Partners, LP to submit a permit compliance certification.

15

The Real Parties allege all the defendants are liable for negligence and gross negligence because they caused the explosions at the TPC plant by deciding to not provide risk mitigation and maintenance. All of the factual allegations describing acts by SK Capital Partners, LP, relate to its status as an investor that assigned two directors on the Board that operated TPC. The Eighth Amended Petition alleges the Company Agreement created an atypical parent-subsidiary relationship where the Board "was a mere puppet for which First Reserve and SK Capital pulled the strings," and that SK Capital Partners, LP was thus a direct participant in TPC's wrongful conduct due to its common officers. The Eighth Amended Petition alleges TPC requested shareholder approval for any expenditure of more than $1,000,000 and turnaround approval and authority more than $5,000,000, and further alleged that if a turnaround had been approved the explosions would not have occurred.

The Eighth Amended Petition alleges all the defendants' "above-described wrongful actions, inaction, omissions, and the resulting TPC plant explosions, fires, toxic emissions, and concussive shock waves that extended far beyond plant premises" constitute a private and a public nuisance.

The petition alleges the "Owners" were directly and personally liable for their own tortious conduct, not under any veil-piercing theory, but because they "maintain such a high degree of operational control and direction, usurped safety functions, financial interest, and ownership, over TPC, it is really Sawgrass, which is owned

16

by funds that are sponsored by First Reserve and SK Capital, which governs TPC Group, LLC and TPC Group, Inc. and operated TPC's Port Neches plant by their direct conduct and for their personal benefit."

3. Fair Notice

Pleadings must not only give notice of the claim and the relief sought but also of the essential factual allegations supporting the claim that if ultimately proven would be sufficient to support a judgment. *First Reserve*, 671 S.W.3d at 661-62. "The critical inquiry concerning the duty element of a negligent-undertaking theory is whether a defendant acted in a way that requires the imposition of a duty where one otherwise would not exist." *Id.* at 660 (cleaned up). The complained-of undertaking must be an affirmative course of action, not an omission, nor may it be premised on a promise to render a service that is not accompanied by either performance or reliance on the promise by the injured party. *Id.*

In their response to the mandamus petition, the Real Parties argue "they have not relied on omissions but have pleaded acts in the form of action verbs like 'interfered,' 'prohibited,' and 'instructed.'" They argue they sufficiently pleaded that the "Owners," through their affirmative conduct, interfered with TPC's pre-scheduled operational turnaround and maintenance agenda, instructed TPC to delay the turnaround, and told TPC it must violate the law. The Eighth Amended Petition described an affirmative course of inaction by the Board of Managers of Sawgrass

17

Holdings GP, LLC, but the Real Parties impute the Board's decisions to SK Capital Partners LP because the Sawgrass Holdings GP, LLC Company Agreement disclaimed the Board Managers' fiduciary duty to "TPC," and SK Capital Partners LP appointed two of the Board's five Managers. They contend the "Owners," including SK Capital Partners, LLC, are directly liable for TPC's actions or inactions that were directed by the Board, not on a veil-piercing theory where the Owners failed to observe corporate separation, but because the Board Members of Sawgrass Holdings GP, LLC designated by SK Capital Partners, LLC were deemed agents of SK Capital Partners, LLC with no duty to the Company in the Company Agreement.

Citing *Traxler v. Entergy Gulf States, Inc.*, the Real Parties argue that SK Capital Partners, LP delayed a scheduled turnaround and thereby interfered with statutory duty to timely certify its compliance with state and federal regulations. *See* 376 S.W.3d 742, 751 (Tex. 2012). Traxler's theory of liability, however, was not based on a claim that Entergy undertook to perform services for another and did so negligently, or that it failed to control another under special circumstances where the law imposes a duty to control another. *See id*. In *Traxler*, the Supreme Court concluded the plaintiff presented a valid common-law negligence claim by alleging and offering evidence that Entergy interfered with a house mover's statutory duty to contact the utility and arrange for the safe passage of the house when an Entergy

18

employee told the house movers that they did not need to contact Entergy if the load was less than 17 feet tall. *Id.* at 743, 751.

The direct action described in the Eighth Amended Petition was allegedly taken by the Board of Sawgrass Holdings GP, LLC, not by SK Capital Partners, LP. Under the bankruptcy court's ruling, the Real Parties cannot pierce the corporate veil, and they do not try. "As long as companies are distinct legal entities, they are not liable for each other's conduct unless some exception applies to remove this limited liability." *First Reserve*, 671 S.W.3d at 660. The Real Parties argue an exception applies here based on the alleged extraordinary control by Sawgrass Holdings GP, LLC, over the daily operations of TPC Holdings, Inc. But the acts through which the Real Parties allege SK Capital Partners, LP and the other "Owners" allegedly undertook "direct, extraordinary operational control" were the acts of a separate corporate entity. The alleged control of TPC by the Board and the two individual Board Members' alleged allegiance to SK Capital Partners LP fails to establish a legal basis for making SK Capital Partners, LP directly liable for negligently undertaking risk mitigation and maintenance at the TPC plant. *See id.* at 662 ("an undertaking duty cannot be predicated on an omission the failure to make an expenditure, or a parent's supervision of its subsidiary's financial and budgetary decisions"); *see also Cleveland Reg. Med. Ctr., L.P. v. Celtic Properties, L.C.*, 323 S.W.3d 322, 352 (Tex. App.—Beaumont 2010, pet. denied) ("A parent company's

control of 'such remote conduct as budgeting activities' is insufficient to impose liability under a control-based negligence theory for injuries arising out of the day-to-day operational activities of a subsidiary.") (internal quotation omitted). The claims asserted against SK Capital Partners, LLC, rely upon omissions by a separate corporate entity and therefore suffer from the same deficiencies identified by the Supreme Court in *First Reserve*. *See* 671 S.W.3d at 660. We conclude that the MDL court abused its discretion by denying SK Capital Partners, LP's motion to dismiss.

## Sawgrass Holdings, L.P.

Next, we consider whether the trial court abused its discretion by denying the motion for rehearing on the Rule 91a motion to dismiss filed by Sawgrass Holdings, L.P. After the Supreme Court denied mandamus relief on the Third Amended Petition, TPC's bankruptcy proceedings concluded, and the Real Parties filed their Eighth Amended Petition, Sawgrass Holdings, L.P. asked the trial court to reconsider its Order of November 16, 2021, which denied Sawgrass Holdings, L.P.'s Rule 91a Motion to Dismiss, and to dismiss the action against Sawgrass Holdings, L.P. The trial court denied the motion in an Order signed on March 28, 2024.

The Real Parties allege that Sawgrass Holdings, L.P. owns or owned TPC Holdings, Inc., which in turn owns TPC Group LLC. Like SK Capital Partners, LP, the Eighth Amended Petition groups Sawgrass Holdings, L.P. with the "Owners" that the Real Parties alleged "exercised direct, daily operational control,

20

management, and direction over TPC by assigning their agents to the Board of Managers of Sawgrass Holdings GP LLC" and that they knew or should have known that the TPC plant "had a dangerous popcorn polymer infection that could only be corrected by shutting down the affected areas" in a turnaround but "instructed the turnaround to be deferred, and also directed that basic maintenance be deferred." An undertaking duty cannot be predicated on an omission or a failure to make an expenditure, nor does indirect control of two of the Members of the Board of Sawgrass Holdings GP LLC make Sawgrass Holdings, LP liable for the decisions of a Board of a separate corporate entity. *See First Reserve*, 671 S.W.3d at 662; *Cleveland Reg. Med. Ctr., L.P.*, 323 S.W.3d at 352. We conclude that the MDL court abused its discretion by denying Sawgrass Holdings, LP's Motion for Rehearing and Second Amended Motion to Dismiss.

## Sawgrass Holdings GP LLC

Next, we consider whether the trial court abused its discretion by denying the motion for rehearing on the Rule 91a motion filed by Sawgrass Holdings GP LLC. Relators compare the Eighth Amended Petition to the Third Amended Petition, noting that the Real Parties frequently altered what had been an allegation of conduct by TPC and replaced it with "TPC's Owners" and Sawgrass Holdings GP LLC. "We are guided by the nature and gravamen" of a claim, not how the claim is artfully

21

pleaded or recast." *In re Breviloba, LLC*, 650 S.W.3d 508, 512 (Tex. 2022) (orig. proceeding) (cleaned up).

1. Alleged Operational Control of the TPC Plant

The Real Parties allege Sawgrass Holdings GP LLC acted as the general partner of Sawgrass Holdings, LP, and that the Board of Managers of Sawgrass Holdings GP LLC "by direct contractual right of control and assuming turnaround governance of the TPC Port Neches plant, a task that is beyond a normal parent-subsidiary relationship, undertook direct daily operational control and governing authority over necessary safety repairs at the TPC Port Neches facility by inappropriately exercising its turnaround approval (which said Defendants had the ultimate authority to do), as well as other key safety and operational decisions." They allege that through the Board, Sawgrass Holdings, LP and Sawgrass Holdings GP LLC, "undertook to perform these critical safety services that they knew or should have known were necessary for Plaintiffs' protection." According to the Real Parties' allegations the negligent undertaking occurred when Sawgrass Holding GP LLC "interfered with a planned safety turnaround, prohibited the plant from maintenance spending and instructed them to focus on cash flow and increased production, all while increasing the Plaintiffs' risk of harm. TPC's Port Neches plant made requests for necessary maintenance and capital improvements including, *inter alia,* a turnaround to eradicate the popcorn polymer problem and an operable fire

22

water supply valve, which were prohibited from occurring" and "demanded and directed TPC increase production and earnings all the while *crucially* prohibiting the expenditure of funds to adequately supply the plant with spare parts, such as pumps, *or* perform necessary maintenance (like turnarounds to address proliferating popcorn polymer problems and explosion risks) needed to keep the plant safe." The Real Parties allege "in the months leading up to the November 27, 2019, explosions, there were turnarounds scheduled or planned for September, October and early November of 2019 to address the popcorn polymer issue that was increasing and worsening daily. And yet, the Board repeatedly interfered with the operations of the Port Neches TPC facility and directed the turnarounds to be delayed in favor of cash flow, increased production, and potential increased profits upon its sale." They allege the "above-described wrongful affirmative acts in operating and managing the Port Neches TPC facility, acting by and through their contractual owner control as set forth in The Company Agreement, were a producing and/or proximate cause of the two explosions in the Port Neches TPC facility and the resulting injuries, harm, and damages to Plaintiffs and their property and/or businesses[.]"

2. Causes of Action

In the Eighth Amended Petition, the Real Parties allege Sawgrass Holdings GP LLC was negligent per se by "failing to submit a permit compliance certification within thirty days after the end of the certification period" and by "failing to correctly

23

report the estimated total for 1,3-butaduene, VOC, CO, and NOx released during an April 13, 2018 emission event." They allege Sawgrass Holdings GP LLC "violated the law by causing, suffering, allowing, or permitting outdoor burning at the TPC plant" during the November 2019 TPC facility explosions and fire, which were not authorized by TPC's permits. They allege, "On November 27, 2019, discharges from firefighting activities involving contaminated water and petrochemicals bypassed the joint wastewater treatment plant and discharged through Outfall 201 into an unnamed ditch, then into Star Lake Canal (Segment 0601A), and then into the Neches River Tidal (Segment 0601), which are waters of the State of Texas," which discharges were not authorized by TPC's permits. They allege they are within the class of persons the statutes and regulations are designed to protect and that they and their property have been damaged by "explosions, fires, toxic emissions, concussive shock waves and their aftermath[.]"

The Eighth Amended Petition alleges "Defendants negligently caused the two TPC plant explosions adversely affecting Plaintiffs, their property, and their health[]" and further alleges as to Sawgrass Holding GP LLC, that "Defendants' negligence and trespass caused injury to Plaintiffs' health, their property, and the health and properties of others."

The Eighth Amended Petition alleges all the Defendants,' "above-described wrongful actions, inaction, omissions, and the resulting TPC plant explosions, fires,

24

toxic emissions, and concussive shock waves that extended far beyond plant premises" constitute a private and a public nuisance.

The Eighth Amended Petition alleges Sawgrass Holdings GP LLC "failed to adequately mitigate against the risk of plant failure, and committed other acts and/or omissions related to TPC's Port Neches plant that affected its turnarounds, shutdowns, maintenance, repairs, upkeep, training, personnel, supervision, safety, and overall operations injuring, damaging, and/or impacting Plaintiffs and others." They allege Sawgrass Holdings GP LLC was "negligent in their undertaking to control and direct operational improvement and risk mitigation for TPC[]" by denying or delaying requests for necessary capital improvements including an operable fire water supply valve. They allege Sawgrass Holdings GP LLC "undertook to perform duties owed by TPC to TPC employees and the public" and that "[b]y taking control over these functions," Sawgrass Holdings GP LLC "took control away from TPC and supplanted TPC's duties to its employees and the public with respect to the specific safety decisions that led to the two plant explosions and the harms that followed."

The petition alleges the "Owners, including but not limited to Sawgrass Holdings LP and Sawgrass Holdings, GP LLC" were directly and personally liable for their own tortious conduct, not under any veil-piercing theory, but because they "maintain such a high degree of operational control and direction, usurped safety

25

functions, financial interest and ownership, over TPC, it is really Sawgrass, which is owned by funds that are sponsored by First Reserve and SK Capital, which governs TPC Group, LLC and TPC Group, Inc and operated TPC's Port Neches plant by their direct conduct and for their personal benefit."

The petition alleges, "Defendants gave misleading information about the two TPC plant explosions and their aftermath to Plaintiffs and the general public and/or withheld material information about the TPC plant explosions and their aftermath from Plaintiffs and the general public and failed to exercise reasonable care when doing so. Plaintiffs justifiably and detrimentally relied on the information provided by Defendants and/or Defendants' silence when they had a duty to speak." The petition additionally alleges, "Defendants also failed to warn Plaintiffs and the general public of a developing danger known to Defendants yet concealed from the public and authorities, including, without limitation, the growing popcorn polymer within the TPC plant that created a significant risk of explosion and release of toxic chemicals and the continued release of toxic chemicals into the community without adequate warning to the community."

3. Fair Notice

The Real Parties argue the claims they are asserting comport with *United States v. Bestfoods*, which held that under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA), a parent

26

corporation could be held directly liable for the costs of cleaning up industrial waste. However, in order for the parent to be held directly liable, it must be an "operator" of the facility, meaning it "must manage, direct, or conduct operations specifically related to pollution, that is, operations having to do with the leakage or disposal of hazardous waste, or decisions about compliance with environmental regulations." 524 U.S. 51, 66-67 (1998). But the Court rejected a fusion of direct and indirect liability through an actual control test. *Id.* at 67-68. "The question is not whether the parent operates the subsidiary, but rather whether it operates the facility, and that operation is evidenced by participation in the activities of the facility, not the subsidiary. Control of the subsidiary, if extensive enough, gives rise to indirect liability under piercing doctrine, not direct liability under the statutory language." *Id.* at 68 (quoting Lynda J. Oswald, *Bifurcation of the Owner and Operator Analysis under CERCLA*, 72 WASH. U.L.Q. 223, 269 (1994)). As noted above, the Real Parties have been enjoined from prosecuting any veil-piercing and alter ego claims. *See First Reserve*, 671 S.W.3d at 658.

The Real Parties argue they have sufficiently alleged a direct liability claim for negligent undertaking by alleging that the Board "maintain[ed] such a high degree of operational control and direction, usurped safety functions, financial interest, and ownership, over TPC, it is really Sawgrass, which is owned by funds that are sponsored by First Reserve and SK Capital, which governs TPC Group, LLC

and TPC Group, Inc. and operated TPC's Port Neches plant by their direct conduct and for their personal benefit." What the Eighth Amended Petition describes, however, is the Board's governance of the financial decisions of the two subsidiaries, TPC Group, LLC and TPC Group, Inc., not its operation of the TPC plant. That control might give rise to indirect liability, but litigation to impose indirect liability on Sawgrass Holdings GP LLC has been enjoined by the bankruptcy court.

The MDL court denied Sawgrass Holdings GP LLC's motion for reconsideration without attempting to perform the "surgical" work of excising veil piercing claims from negligent undertaking claims. *See First Reserve*, 671 S.W.3d at 659. It could not have successfully excised a negligent undertaking claim from the indirect liability claims because, despite the Real Parties' attempts to artfully plead otherwise, the factual allegations of the Eight Amended Petition do not indicate Sawgrass Holdings GP, LLC operated the facility, but that it operated the companies that operated the facility. We conclude that the MDL court abused its discretion by denying Sawgrass Holdings GP LLC's Motion for Rehearing and First Amended Motion to Dismiss.

## Other Parties

After Relators filed their mandamus petition, we reversed the MDL court's denial of special appearances and rendered judgment dismissing for lack of personal jurisdiction the Real Parties' claims against First Reserve Management, L.P., First

Reserve Corporation, L.L.C., FR XII Alpha AIV, L.P., FR XII-A Alpha AIV, L.P., FR Sawgrass, L.P., SK Second Reserve, L.P. f/k/a SK Capital Partners, SK Sawgrass, LP. *See TPC Grp. Litigation*, 2024 WL 3197475, at *17. Our mandate issued September 5, 2024.

By filing a Rule 91a motion to dismiss, a party submits to the court's jurisdiction on the proceedings on that motion and is bound by the court's ruling. *See* Tex. R. Civ. P. 91a.8. But the procedure is cumulative of other proceedings that authorize dismissal. *See id*. 91a.9. A case becomes moot when the court can no longer grant the requested relief or otherwise affect the parties' rights or interests. *See Elec. Reliability Council of Tex., Inc. v. Panda Power Generation Infrastructure Fund, LLC*, 619 S.W.3d 628, 634–35 (Tex. 2021). We conclude the mandamus petition is moot as to First Reserve Management, L.P., First Reserve Corporation, L.L.C., FR XII Alpha AIV, L.P., FR XII-A Alpha AIV, L.P., FR Sawgrass, L.P., SK Sawgrass, LP because those parties have been dismissed from Trial Cause Number A2020-0236-MDL on other grounds.

## Conclusion

The causes of action alleged against Relators in the Eighth Amended Petition have no basis in law because "the allegations, taken as true, together with inferences reasonably drawn from them, do not entitle the claimant to the relief sought." Tex. R. Civ. P. 91a. The Real Parties do not allege a cause of action for which direct

29

liability can be imposed upon Relators, and the bankruptcy court has enjoined the Real Parties from asserting claims based on indirect liability. The MDL court abused its discretion in denying Relators' motions as listed in its March 28, 2024 order. The adequacy of a remedy by appeal "must be determined by balancing the benefits of mandamus review against the detriments." *In re Team Rocket*, 256 S.W.3d 257, 262 (Tex. 2008). Here, mandamus is appropriate "to spare the parties and the public the time and money spent on fatally flawed proceedings." *Essex Ins. Co.*, 450 S.W.3d at 528 (Internal quotations and citations omitted or cleaned up.). We are confident that the MDL court will vacate its order of March 28, 2024, and dismiss the claims against those Relators who have not already been dismissed by way of special appearance. The writ will issue only if the MDL court does not comply.

PETITION CONDITIONALLY GRANTED.

PER CURIAM

Submitted on July 1, 2024
Opinion Delivered February 13, 2025

Before Golemon, C.J., Wright and Chambers, JJ.